(No. 37019.—)

EXCHANGE NATIONAL BANK OF CHICAGO *et.al.,* Appellants, *vs.* THE COUNTY OF COOK, Appellee.

*Opinion filed September 28, 1962.*

HARRY G. FINS, of Chicago, for appellants.

DANIEL P. WARD, State's Attorney, of Chicago, (THOMAS A. HETT and RONALD BUTLER, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs appeal directly from an order denying their motion to vacate a declaratory judgment order entered on their complaint holding the Cook County zoning ordinance

valid and constitutional insofar as it affects plaintiffs' property and dismissing plaintiffs' complaint for want of equity. The matter has been properly certified to us by the trial court pursuant to section 75 (1)(c) of the Civil Practice Act. (Ill. Rev. Stat. 1961, chap. 110, par. 75(1)(c).) No questions are raised on the pleadings, and it is conceded that all administrative remedies have been exhausted.

Plaintiffs' property is a vacant lot containing approximately three and three quarters acres located 230 feet north of Rand Road (U.S. Route 12) and 130 feet east of Grove Avenue, one block east of River Road (U.S. Route 45) in Maine Township in Cook County. Plaintiffs purchased this property in 1958 at a cost of $35,000, and at that time the zoning was R-4, single-family residence district. Plaintiffs subsequently received $10,000 for a strip of land off the west side of the subject property which was condemned by the State Highway Department.

On March 23, 1959, the plaintiffs petitioned the Cook County zoning board of appeals for a reclassification from R-4 to the R-5 general residence district, which would permit the construction of multifamily units. Thereafter the Cook County zoning board of appeals, after hearings at which no objection was presented, recommended that the zoning ordinance of Cook County be so amended and the subject property reclassified to R-5. On August 18, 1959, the recommendation of the zoning board of appeals was approved and adopted by the county board of commissioners of Cook County and the property was reclassified and placed upon the zoning maps of Maine Township as R-5.

Thereafter the plaintiffs proceeded to expend some $2500 in architectural, engineering and survey costs in preparation for erection of bilevel town houses consisting of some 60 units upon the subject property. Loan arrangements were made, together with plans for sewage disposal.

On March 8, 1960, following public hearings at which no objections were presented by plaintiffs, the Cook County

board of commissioners adopted a comprehensive amendment to the Cook County zoning ordinance which reclassified the subject property to the original R-4 single-family residence district classification in existence at the time of purchase by the plaintiffs. Thereafter the plaintiffs filed an application for reclassification to the R-5 general residence district, notices were given, public hearings held, and the zoning board of appeals of Cook County, on September 14, 1960, again recommended to the county board the reclassification to R-5. On August 3, 1960, the city of Des Plaines advised the county clerk that the city objected to the proposed reclassification and, as a result thereof, the recommendation of the zoning board of appeals was not concurred in by the Cook County board of commissioners. This proceeding followed.

We have carefully reviewed the entire record, including the exhibits, and have summarized the salient facts, as follows:

Adjoining the subject property to the north is a greenhouse for wholesale use, and Woodland Avenue which ends near the Des Plaines River. Proceeding westward from the river on Woodland Avenue, the improvements become progressively more desirable. On the north side of Woodland, approximately 600 to 800 feet northwest of the property, are located 31 town houses which were built in 1960. Immediately west of the town houses is a parking lot, a bowling alley, a kiddy park, a cocktail lounge, the Rio-Rand Hotel, and the American Wilbert Vault Corp. plant. On the south side of Woodland are nicely constructed homes of good quality for single-family purposes.

West of the property in question is Grove Avenue. The northeast corner of Grove Avenue and Rand Road is occupied by a parking lot used by the Ladendorf automobile business. Immediately north of this lot are 3 dwellings and a trailer, which are rented for multifamily use, and a motel. North of the motel on Grove Avenue, ending on Woodland

Road, contiguous to the property, are located private homes. The northwest corner of Grove Avenue and Rand Road is occupied by the Ladendorf auto show rooms. Further north on Grove Avenue, the Ladendorf service garage is located. The west side of Grove Avenue contains a number of substantial single-family dwellings.

To the south of the subject property, on the north side of Rand Road between Hawthorne Avenue and Grove is located a warehouse, several single-family dwellings and a vacant lot at the northeast corner of Rand and Grove.

In the area east of the subject property are some 40 single-family dwellings, many of excellent quality. The lots upon which these dwellings have been built are deep lots, many of which abut upon the subject property. The rear part of the lots, pictures of which appear in the exhibits, contain frame buildings and dog kennels, and are not particularly attractive.

Proceeding westerly on Rand Road from Ladendorf showrooms brings many commercial uses, including the Fox and Hounds Tavern, an automobile used parts store, a used car lot, and a trailer rental business. "Five Corners" is an intersection at which River, Mannheim and Rand Roads converge. The southeast corner of "Five Corners" is occupied by a tavern, a gas station, an electric shop, the River and Rand Road Liquor and Food Shop, and the Miami Lounge. Just across from Ladendorf's automobile business on Rand Road are located private homes, and adjacent thereto is a chinchilla ranch, the A & B Heating Co., a Jehovah's Witnesses church, and the North School.

There are plans to build additional single-family homes in the area to the east of the subject property. While there are certain nonconforming uses which have existed for many years, the bulk of the area is single-family residential property. It was apparently for this reason that the zoning board had established the area as a single-family residential neighborhood even though uniformity was lacking.

Plaintiffs have pointed out that some 31 town houses were built in 1960 within 600 to 800 feet of the subject property, and argues that plaintiff will lose some $37,000 if they are prevented from constructing the town houses as planned. Defendant contends that with R-4 zoning, plaintiffs will still be in a position to earn a profit of $23,400, and points out the plaintiffs purchased the property when it was zoned R-4.

On the question of the highest and best use of the property in question, plaintiffs called as experts two real-estate men, M. Edward Smith and Richard W. Manke. Defendant's witnesses, George H. Kranenberg, a planning and zoning consultant, and S. C. Wessell, a real-estate man, testified that the proper use of the property was single-family residences, while plaintiffs' experts testified that their opinion was that the multiple-family residence use was the highest and best. The testimony and exhibits tend to establish that most of the surrounding area has been devoted to single-family residence use for many years, with the exception of the 31 town houses built in the area in 1960, the few older properties devoted to multifamily use, and the pre-existing commercial uses made of certain properties prior to the adoption of the R-4 classification here being attacked.

Plaintiffs' contend that the Cook County zoning ordinance as applied to the plaintiffs' property is invalid and unconstitutional, being in violation of the due-process clauses of section 2 of article II of the Illinois constitution and the fourteenth amendment to the Federal constitution. Defendant contends that the R-4 classification tends to promote public health, and the safety, comfort and welfare of the inhabitants of the area, that regulation of density as related to land use is a legitimate object of police power, and that plaintiffs have failed to overcome the presumption of validity of the ordinance.

It is always presumed, in an attack upon an ordinance, that the enactment is valid, and the burden of proving its

invalidity falls upon the one who attacks the ordinance. (*Jacobson* v. *City of Evanston,* 10 Ill.2d 61.) Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *Morgan* v. *City of Chicago,* 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104.) In *La Salle Nat. Bank of Chicago* v. *Cook County,* 12 Ill.2d 40, we reviewed the considerations determining the validity of an ordinance as applied to a particular property and stated that "among the facts which may be taken into consideration in determining the validity of an ordinance are the following: (1) The existing uses and zoning of nearby property, [citing cases], (2) the extent to which property values are diminished by the particular zoning restrictions, [citing cases], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citing cases], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, [citing cases], (5) the suitability of the subject property for the zoned purposes [citing cases], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. [Citing cases]."

We have carefully considered all of the elements of this case as above indicated. We are not unmindful that the plaintiffs acted in good faith in proceeding with plans to construct town houses on the subject property under the R-5 classification. However, it is our conclusion that the R-4 classification of the subject property is not an unreasonable one, and does have a tendency to promote the public health, safety and welfare of the inhabitants of the area. The tract is located near the center of a residential area which is, generally speaking, a single-family one. The regulation of density, as related to land use, is a legitimate object of police power. (*Wesemann* v. *Village of La Grange Park*, 407 Ill. 81.) The validity of an amendatory zoning ordinance, with respect to the exercise of the police power, must be determined by the same rules and tests as those applied in ascertaining the validity of the original zoning ordinance. *Trust Company of Chicago* v. *City of Chicago*, 408 Ill. 91.

The basic problem in this case, as in the majority of zoning matters, is one of applying the same rules of law to varying factual situations. Where a legitimate dispute may exist as to the desirability of the classification imposed, it is clear that the courts should not intervene to substitute their judgment for that of the duly constituted legislative body. In our opinion, this is the situation prevailing here. The question as to the zoning which might be considered most desirable for the subject property is a matter upon which reasonable persons may differ. We cannot say that the R-4 classification is clearly unreasonable. Therefore, under the decisions of this court, and the well-recognized principles of law, this court should not intervene to substitute its judgment for that of the legislative body. Plaintiffs have failed to sustain their burden of proof that their property has been confiscated by this ordinance without due process of law, and the presumption of validity of the ordinance has not been overcome. The lower court properly dismissed the

complaint and denied the motion to vacate its judgment holding the Cook County zoning ordinance as applied to plaintiffs' property valid and constitutional. Its judgment is hereby affirmed.

*Judgment affirmed.*