ROSEMARY YORK *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF WILMETTE *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 85—2252, 85—2258 cons.

Opinion filed September 25, 1986.

James T. Murray, of Evanston, for appellants.

Robert J. Mangler, of Wilmette, for appellee the Village of Wilmette.

George L. Plumb, of Pedersen & Houpt, of Chicago, for appellee Shoreline Place, Inc.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, the village of Wilmette, granted a special use permit with exceptions to Shoreline Place, Inc., defendant, allowing Shoreline to construct an apartment building in an area zoned for townhouse residences. Plaintiffs, Rosemary York *et al.*, reside in the area where the building will stand. Plaintiffs brought an action against defendants in the circuit court of Cook County. Plaintiffs sought a declaration that the village's grant of the permit was invalid and an injunction preventing Shoreline from constructing the building. The trial court upheld the validity of Wilmette's grant of the special use permit, dismissed several counts of plaintiffs' complaint, and found for defendants on all remaining issues. Plaintiffs appeal, contending that (1) Wilmette did not follow its own ordinances in granting the special use permit, (2) the trial court's judgment was against the manifest weight of the evidence, and (3) the special use permit was not viable six months from the date that it issued.

We affirm.

The lot on which Shoreline proposed to construct its apartment building lies on the north side of Linden Avenue in Wilmette halfway between Third and Fourth streets. The lot is 100 feet wide by 196 feet long and contains 19,600 square feet. The village zoned the land for townhouse residences. The lot is essentially flat and is the only undeveloped land in the immediate vicinity.

Shoreline proposed to construct upon the site a housing facility for the elderly. The facility would be a five-story building in the shape of a block "I" that would contain 44 dwelling units, consisting of 11 efficiency apartments, 32 one-bedroom apartments, and 1 two-bedroom apartment. The building would be 44½ feet tall, 72 feet 4 inches wide at its north and south facades, and 100 feet long. The east wall of the building would lie 40 feet from the front door of its immediate neighbor.

Single-family residences, including rowhouses and townhouses, border the lot immediately to the north. Rowhouses and townhouses border the lot immediately to the east. Businesses border the lot to the west, and the Chicago Transit Authority's elevated train terminal,

yard, and parking lot border the lot to the south.

On October 20, 1983, Shoreline applied to Wilmette for a special use permit to construct the building. The Wilmette zoning board of appeals held hearings and subsequently recommended that the village board grant the permit. On March 20, 1984, the village board enacted ordinance No. 84—0—10, which granted a special use permit with exceptions to the zoning code's requirements for that zoning district. The ordinance provided, in pertinent part, as follows:

"NOW, THEREFORE, BE IT ORDAINED by the President and Board of Trustees of the Village of Wilmette, Cook County, Illinois:

\* \* \*

*Section 2*: That the Director of Community Development of the Village of Wilmette is hereby authorized and directed to issue a Special Use Permit to permit the construction of a 44-unit apartment building for housing for the elderly \* \* \* subject to the following conditions and exceptions:

1. The building may consist of five stories and the building height may reach, but not exceed, 44 feet, six inches (these limitations being exceptions to the otherwise applicable limitations of 2½ stories or 35 feet, whichever is less);

2. The floor area ratio may reach, but not exceed, 1.71 (such limitation being an exception to the otherwise applicable ratio of 0.8);

3. A variation of 7 feet, 6 inches is granted from the side yard requirements for the east side of the property;

4. A variation of 7 feet, 10 inches is granted from the side yard requirements for the west side of the property;

5. A variation of 73 parking spaces is granted with respect to the number of parking spaces which would otherwise be required;

6. All parking spaces may be provided outside the building (which constitutes a variation from the provisions of the zoning ordinance which would otherwise require that some of the parking spaces must be located within the building);

7. Construction of the building shall be in accordance with the plans and specifications as submitted in final form to the Zoning Board of Appeals;

8. Drainage and utility plans shall be approved by the Village Engineer;

9. The recommendations of the Site Plan Review Committee as set forth in the Committee's letter dated December 8,

1983, shall be followed, and the building shall conform to all other applicable provisions of the zoning and building codes of the Village of Wilmette."

Plaintiffs brought this action on July 3, 1984. They alleged in their five-count complaint, to which they later added a sixth count, essentially that the village board violated Wilmette's zoning code by granting the special use permit. Plaintiffs alleged in count I that the village board granted to Shoreline variations from the zoning code without following the procedure that the zoning code prescribes. Plaintiffs alleged in count II that the zoning board of appeals acted beyond its authority in recommending that the village board grant the permit because the zoning code does not define the term "exceptions" or set standards for the zoning board. Plaintiffs alleged in count VI that the village board's grant of the permit was void because Shoreline did not begin construction within six months after the village authorized the permit, as the zoning code prescribes.

Plaintiffs also essentially alleged that the building would injure the area where they reside. They alleged in count III that the building would depreciate property values because it would be too large and densely populated to conform to the present character of their neighborhood. Plaintiffs alleged in count IV that the building would overload the area's sewage and drainage system, causing flooding. Plaintiffs additionally alleged in count V that the building would increase neighborhood traffic, provide an inadequate number of parking spaces, and interfere with their use of light and air. They sought a declaration that ordinance No. 84—0—10, which granted Shoreline the special use permit, was void and an injunction preventing the village from issuing a special use permit and preventing Shoreline from constructing the building.

The trial court held a hearing in which the parties presented testimony and other evidence. On May 31, 1985, at the close of the hearing, the court dismissed counts I, II, and VI with prejudice, finding that the ordinance granting the special use was valid. The trial court also found for defendants on plaintiffs' remaining claims that the building would injure their neighborhood, finding that plaintiffs did not establish by clear and convincing evidence that Wilmette's grant of the special use permit was arbitrary and unreasonable. Plaintiffs appeal.

I

Plaintiffs first claim that ordinance No. 84—0—10, granting the special use to Shoreline, is invalid. They contend that an amendment

to the zoning code, upon which the village board based its grant of the special use, is arbitrary and unreasonable.

On September 16, 1975, the village board enacted ordinance No. 75—0—33. This law amended the zoning code by adding a special use to the statutory list of special uses for townhouse residence zoning districts. The amendment provides as follows:

"(b) *Special Uses*:

* * *

(7) Housing for the elderly, which may be granted with conditions permitting exceptions to the regulations of this zoning district and other provisions of the zoning ordinance, including building height, usable open space, floor area ratio, dwelling units per acre, bulk, yard depth, off-street parking, loading, and such other conditions as the Board of Trustees may require." (Wilmette Zoning Ordinance, art. VI, sec. C.1(b)(7).)

Plaintiffs contend that the amendment is impermissibly vague because it does not define the term "exceptions." The amendment, plaintiffs argue, uses "the cloak of the 'exception' within which to wrap a variation procedure."

Zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 440, 185 N.E.2d 250, 253.) For that reason, a court will presume an ordinance to be valid and the party attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety, or welfare. 25 Ill. 2d 434, 439-40, 185 N.E.2d 250.

Relevant factors that a court might consider in determining the validity of a zoning ordinance include (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the vicinity of the subject property. *La Salle National Bank v. County of*

*Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.

■ Where it appears, from all of the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 440, 185 N.E.2d 250, 253.) These same principles apply to amendatory zoning ordinances. (25 Ill. 2d 434, 441, 185 N.E.2d 250.) Finally, a reviewing court will not disturb the trial court's findings unless against the manifest weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 70.

■ Applying the above principles to the instant case, we agree with the trial court that plaintiffs did not meet their burden of proving that ordinance No. 75—0—33, creating a special use for housing for the elderly, bears no substantial relation to the public health, safety, or welfare. The trial court found that the area was predominantly residential with several retail and commercial uses and that the special use would diminish property values. The court also found that the gain to the public and the promotion of the public health, safety and welfare outweighed the destruction of property values and the hardship that the special use imposed upon individual property owners. The court found the subject property to be very suitable for the special use. Lastly, the court briefly considered the length of time that the property sat vacant since Wilmette owned the lot and the village's goals involving it could change with each election. After reviewing the record, we cannot say that the trial court's findings were against the manifest weight of the evidence.

■ Further, we reject plaintiffs' claim that the amendment uses a special use with exceptions to produce what is, in effect a variance. Plaintiffs are correct that a special use differs from a variation. A special use grants permission to an owner to use his property in a manner contrary to the ordinance, provided that the intended use is one of those specifically listed in the ordinance and that the use will serve the public convenience. A variance, however, grants relief to an owner from the literal requirements of the ordinance where literal enforcement would cause undue hardship. *International Harvester Co. v. Zoning Board of Appeals* (1963), 43 Ill. App. 2d 440, 446, 193 N.E.2d 856, 859-60, quoting *Rosenfeld v. Zoning Board of Appeals* (1958), 19 Ill. App. 2d 447, 450, 154 N.E.2d 323, 325.

■ However, a court should construe a zoning ordinance to give effect to the intent of the drafters by concentrating on the ordinance's terminology, goals and purposes, in addition to the natural import of the words used in common and accepted usage, the setting in

which they are employed and the ordinance's general structure. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 313, 469 N.E.2d 183, 188, quoting *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 520, 377 N.E.2d 21, 25.

We conclude that the zoning amendment created a special use, with exceptions if necessary, and not a variation. The special use here is housing for the elderly. The amendment specifically added the use to the zoning code's list of special uses for townhouse residence zoning districts. Further, the trial court found that the special use would serve the public convenience. Therefore, we hold that the language of ordinance No. 75—0—33, amending Wilmette's zoning code by creating a special use for housing for the elderly, is unambiguous and the amendment is valid.

## II

Plaintiffs next contend that ordinance No. 84—0—10, which granted the special use to Shoreline, is invalid because the ordinance granted variances, in addition to exceptions, without following the procedures that the zoning code prescribes. Plaintiffs also contend that the trial court's findings regarding the special use permit were against the manifest weight of the evidence.

Special uses, in addition to zoning ordinances and amendatory zoning ordinances, enjoy a presumption of validity. This presumption may be overcome only by clear and convincing evidence that the granting of the special use will result in real or substantial harm to the public health, safety, or welfare. *Thompson v. Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 576, 421 N.E.2d 285, 297-98.

The trial court properly applied the criteria contained in article XIII, section B.5(e), of Wilmette's zoning code (see *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 311-12, 469 N.E.2d 183, 187-88), in addition to the six factors of *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69. The court found that the evidence was insufficient to determine whether the special use would be detrimental to the public health, safety, or general welfare; there would be insubstantial injury to property in the immediate vicinity of the special use and diminishment of property values; the special use would not impede normal and orderly development and the improvement of surrounding property for permitted uses; adequate utilities, access roads, drainage and necessary facilities existed or would be provided; the defendant took adequate measures to provide ingress and egress so as to minimize traffic congestion; and, lastly, the special use conformed in all other respects

to the applicable regulations for that zoning district.

After reviewing the record, we cannot say that the trial court's findings are contrary to the manifest weight of the evidence. We conclude that plaintiffs did not satisfy their burden of proving by clear and convincing evidence that the special use bears no substantial relation to the public welfare. At best, plaintiffs have shown that a difference of opinion exists concerning the reasonableness of the special use. This is insufficient to compel a finding that the special use is unconstitutional. (*Thompson v. Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 580, 421 N.E.2d 285, 300.) Further, the "variations" to which plaintiffs refer in the special use permit to Shoreline are simply exceptions to several zoning code requirements, as is the special use itself. We hold that ordinance No. 84—0—10, granting a special use with exceptions to Shoreline, is valid.

## III

Plaintiffs lastly claim that the trial court erred in dismissing count VI of their amended complaint. They contend that the special use permit is no longer valid because defendants did not exercise it within six months after its authorization. Wilmette's zoning code provides that the recipients of a variation or a special use must exercise it within six months after the date of the variation or special use ordinance, or it shall automatically become invalid. (Wilmette Zoning Ordinance, art. XIII, sec. C.4.) Defendants contend that plaintiffs' conduct estops plaintiffs from asserting the zoning code's limitations period because it was plaintiffs' conduct, *i.e.*, bringing this action, that prevented defendants from exercising the special use.

We must, of course, reject plaintiffs' contention. A party may assert estoppel as a bar to the statute of limitations as to other matters; a party's conduct may estop him or her from raising the defense of the statute of limitations. (*Sabath v. Morris Handler Co.* (1969), 102 Ill. App. 2d 218, 223, 243 N.E.2d 723, 726, relied upon in *Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 763, 455 N.E.2d 246, 252.) If a party's conduct has reasonably induced another to follow a course of action that otherwise would not have been followed and that would be to the latter's detriment if he or she did not later repudiate such course of action, an estoppel arises to prevent injustice or fraud. *Sabeth v. Morris Handler Co.* (1969), 102 Ill. App. 2d 218, 223, 243 N.E.2d 723, 726.

It is not essential that the representation or conduct was fraudulent in the strict legal sense or done with an intent to mislead or de-

ceive. Rather, the test is whether, in all the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct. Although no duty ordinarily exists to apprise an adversary of his rights, one cannot justly or equitably lull his adversary into a false sense of security, causing the statute to bar his claim and then plead the very delay that his conduct caused. *Sabath v. Morris Handler Co.* (1969), 102 Ill. App. 2d 218, 225, 243 N.E.2d 723, quoting *Howard v. West Jersey & Seashore R.R. Co.* (1928), 102 N.J. Eq. 517, 521, 523, 141 A. 755, 757-58.

The party asserting the estoppel must have relied on the act or representation and because of that reliance refrained from commencing an action within the limitations period; the conduct must have been of such character as to prevent inquiry, elude investigation, or mislead the party with the cause of action. Additionally, the "lulling" period must not have expired before the limitations period. *Benyon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 763, 455 N.E.2d 246, citing *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 273-75, 197 N.E.2d 860, 864-65.

These principles are applicable to the instant case. The six-month period within which a person must exercise a variation or special use is essentially a limitations period. Plaintiffs brought this action after Wilmette granted the special use, forcing defendants to litigate. Defendants would have exercised the special use had plaintiffs not brought this action. Additionally, the litigation continued beyond the six-month period. It is surprising to hear plaintiffs claim that the statute of limitations now bars defendants from exercising the special use when plaintiffs are the ones who prevented defendants from so doing. We hold that the trial court did not err in dismissing count VI of plaintiffs' amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and McMORROW, JJ., concur.