HOMEOWNERS ORGANIZED TO PROTECT THE ENVIRONMENT, INC. *et al.*, Plaintiffs-Appellants, v. FIRST NATIONAL BANK OF BARRINGTON, Trustee, *et al.*, Defendants-Appellees (The Village of Lake Barrington, Defendant-Appellant and Defendant-Appellee).

Second District Nos. 2—87—0262, 2—87—1010, 2—87—1011 cons.

Opinion filed March 31, 1988.

716

Siegel & Warnock, of Chicago (Jack M. Siegel, of counsel), for appellants Homeowners Organized To Protect The Environment, Inc., Edward E. Bohlke, Margaret E. Bohlke, Theodore J. Novakowski, Dorothy A. Novakowski, Wade R. Vanderpoel and Ruth S. Vanderpoel.

Christopher J. Keith, of Boodell, Sears, Giambalvo & Crowley, Lee T.

Hettinger, and Bell, Boyd & Lloyd, all of Chicago (Thomas Z. Hayward, Jr., and Lawrence M. Gavin, of counsel), for appellees First National Bank of Barrington, Richard C. Smith and Barbara Smith.

James P. Bateman, Stanley M. Lipnick, Richard K. Hellerman, and Arthur L. Klein, all of Arnstein, Gluck, Lehr, Barron & Milligan, of Barrington, for Village of Lake Barrington.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs, Homeowners Organized to Protect the Environment, Inc. (HOPE), Edward E. Bohlke and Margaret E. Bohlke (Bohlkes), Theodore J. Novakowski and Dorothy A. Novakowski (Novakowskis) (hereinafter sometimes referred to collectively as HOPE), appeal the judgment of the circuit court of Lake County which declared as constitutional and otherwise valid ordinance No. 86—0—6 adopted June 2, 1986, by the Village of Lake Barrington (Village). The ordinance granted a special use to defendants, First National Bank of Barrington, trustee under trust No. 11—3051, and Dr. Richard C. Smith and Barbara Smith, as beneficiaries of trust No. 11—3051 (hereinafter collectively the Smiths). The appeal, denominated No. 2—87—0262, was consolidated with appeals denominated Nos. 2—87—1010 and 2—87—1011, respectively, for oral argument and disposition.

In the latter two appeals, the Village (No. 2—87—1010) and HOPE (No. 2—87—1011) challenge the trial court's exercise of jurisdiction after HOPE filed the notice of appeal in No. 2—87—0262. They appeal the trial court's judgment which tolled the running of the ordinance's requirement that the Smith's commence substantial construction on the site within one year. The trial court tolled the running of the period from the time HOPE filed its complaint August 11, 1986, challenging the Village's granting of the special use, through the disposition of the appeal process.

On June 2, 1986, in response to a petition by the Smiths, the Village adopted its ordinance No. 86—0—6 permitting construction on their property of a professional office building as a special use for a planned development. The ordinance was subject to conditions, including a one-year time limit imposed by section 7:

"A. If substantial construction has not commenced within one (1) year from the effective date of this Ordinance, then the Special Use-Planned Development herein permitted shall lapse and be of no further force or effect, provided, however, in its discretion and for good cause the Corporate Authorities of this

Village may extend for reasonable time not to exceed one year, the period for commencement of construction.

B. If the Special Use-Planned Development permitted in this Ordinance lapses under the provisions of paragraph A of this Section 7, such designation shall be removed from the official zoning map and a notice of revocation filed with the Lake County Recorder for recording. The zoning regulations applicable before a Special Use-Planned Development is approved shall then be in effect." (Village of Lake Barrington Zoning Ordinance §7 (1986).)

The ordinance became effective on June 13, 1986.

On August 11, 1986, by agreed order, HOPE became the plaintiff, through realignment of the parties to earlier litigation between the parties, attacking the validity of ordinance No. 86—0—6. After a bench trial, the circuit court entered judgment upholding the validity of the ordinance as constitutional and not otherwise invalid on January 30, 1987. HOPE's motion to reconsider the judgment was denied on February 23, 1987, and on March 20, 1987, HOPE filed a notice of appeal (No. 2—86—0262). On May 27, 1987, two weeks before the expiration of the one-year time limit, the Smiths filed an emergency motion for limited stay pending appeal asking the trial court to stay the running of the one-year time limit. The court denied that motion, observing that there was no allegation or showing that the Village had refused to abide by the requirements of the ordinance or would utilize the one-year condition as a bar to the Smiths' special use permit.

The Smiths' attorney thereafter requested the Village to extend the one-year time limit. That request was considered by the Village at its regular board meeting on June 1, 1987, and at a special meeting held on June 13, 1987, devoted specifically to the request for extension. The Smiths, by their attorney, advised the board that they were prepared to proceed with site work and footings on the site even while HOPE's appeal was pending, and that such work would constitute "substantial construction" under Illinois law. The president of the board opined that the Smiths' willingness to proceed with substantial construction while the appeal was pending was inconsistent with any assertion that the pendency of that appeal was sufficient reason for them to have done nothing on the site during the original year. He stated that good cause for an extension had not been shown as required by the ordinance. Their request for an extension was denied.

On June 17, 1987, the Smiths filed with the circuit court an amended emergency motion for limited stay pending appeal. On July

14, 1987, after a hearing, the circuit court entered judgment tolling the running of the one-year time limit of the ordinance from August 11, 1986, until the disposition of the appeal challenging the issuance of the special use permit. On September 23, 1987, the court denied a motion to reconsider that judgment.

The court ruled that its tolling judgment was collateral or incidental to its final judgment order sustaining the validity of the ordinance and, therefore, within its jurisdiction even while the appeal from its final judgment was before this court. The court refused to review the board's denial of the Smiths' request for extension of time. It would not consider the transcripts of the board meetings which the Village tendered. Further, the court stated that common sense and prudence precluded the Smiths from commencing construction during the pendency of HOPE's appeal, and that it would be inequitable to allow the pendency of litigation to forestall the development which had been authorized by the ordinance. The court concluded that the legal process should not be allowed to emasculate the rights of defendants. Invoking its equity powers and section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701), the court declared that the one-year time limit contained in the ordinance was tolled starting from the date on which HOPE filed its complaint challenging the validity of said ordinance and continuing through the disposition of the appeal process.

NOS. 2—87—1010 AND 2—87—1011

In No. 2—87—1010 the Village appeals, and in No. 2—87—1011 HOPE appeals the exercise of jurisdiction by the circuit court after the notice of appeal had been filed in No. 2—87—0262 involving the substantive issues attacking the Village's issuance of a special use permit to the Smiths. The Village and HOPE also challenge the authority of the circuit court to toll the running of the ordinance's one-year time period for the Smiths to commence substantial construction on the site.

The Village and HOPE raise the following specific issues: (1) the Smiths were estopped from seeking a tolling of the time period; (2) the trial court lacked jurisdiction to consider the tolling issue because a notice of appeal had been filed in the underlying case; (3) the court did not have authority to review the Village's legislative determination beyond determining its constitutionality; (4) the Smiths had no right to relief from the unambiguous time limit; (5) the trial court should have sustained the refusal of the Village to extend the time in the sound exercise of its discretion; and (6) the court's judgment was

beyond the scope of its equitable powers.

It would appear that we must decide only two issues to resolve Nos. 2—87—1010 and 2—87—1011: (1) did the trial court have jurisdiction to consider the tolling issue after a notice of appeal had been filed in the underlying cause and (2) did the trial court have authority to enter a judgment tolling the running of the time limitation of the ordinance during the pendency of the litigation challenging the issuance of the special use. We answer both questions in the affirmative.

The Village and HOPE argue that the trial court did not have jurisdiction, after HOPE filed its notice of appeal in the underlying action No. 2—87—0262, to consider the Smiths' petition to toll the running of the one-year time limit for the commencement of substantial construction. They rely on the well-established principle that the filing of a notice of appeal deprives the trial court of jurisdiction over the case. (*Ragan v. Fourco Glass Co.* (1977), 47 Ill. App. 3d 1, 8, 361 N.E.2d 707.) The Smiths respond with the line of cases, the most recent of which is our *Town of Libertyville v. Bank of Waukegan* (1987), 152 Ill. App. 3d 1066, 504 N.E.2d 1308, which make an exception to the general rule of loss of jurisdiction when the matter is collateral or incidental to the issues in the case on appeal.

■ HOPE and the Village characterize the trial court's tolling order as modifying the judgment which is the subject of appeal in No. 2—87—0262. However, we conclude that the tolling judgment was collateral and incidental to the judgment upholding the ordinance. (See *In re Estate of Denaro* (1983), 112 Ill. App. 3d 872, 445 N.E.2d 1308.) As HOPE acknowledges in its brief, "[a]t no time was the issue of staying the one-year commencement period raised nor was there any objection to the findings of the trial court [in appeal No. 2—87—0262] that the extension of that period 'can be accomplished only by the Village Board [quoting the trial court].' " It is undisputed that no issue concerning the time limit was raised in the trial court, and therefore, it could not have been raised in the underlying appeal as issues not raised in the trial court are waived. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) However, orders entered after the filing of the notice of appeal are valid if the substantive issues on appeal are not affected and if the nature of the appeal is not altered. By example, where the subsequent modification of a preliminary injunction merely served to implement the preliminary injunction, the trial court retains jurisdiction to implement its orders. *American Federation of State, County & Municipal Employees v. Walker* (1975), 27 Ill. App. 3d 883, 889-90, 327 N.E.2d 568.

■ The issues raised in the underlying appeal are that: (1) the

granting of the special use permit was an invalid exercise of power by the Village; (2) the Village's underlying zoning ordinance upon which the grant of the special use was predicated was invalid; and (3) the special use permit was invalid by reason of its being in violation of the underlying ordinance. It is immediately apparent that no issue was raised as to the provision of the ordinance limiting the time during which the commencement of substantial construction must begin. The court's ruling did not change or modify the judgment appealed from, and the judgment tolling the time in the ordinance does not interfere with our review of the underlying judgment. (See *Holmes v. Kammerman* (1956), 10 Ill. App. 2d 450, 457, 135 N.E.2d 162.) Thus, the trial court did not err when it determined that it had jurisdiction to consider the time-limit condition because it was collateral and incidental to the issue on appeal.

The next question raised by these appeals is whether the trial court had the authority to toll the running of the time of a special use permit where the Smiths allege they have been precluded from exercising the permit by reason of pending litigation challenging the granting of the ordinance. Neither our research nor the authority cited by the parties has disclosed an Illinois case precisely on point except *York v. Village of Wilmette* (1986), 148 Ill. App. 3d 108, 498 N.E.2d 712, relied upon by the Smiths. In *York*, the Village of Wilmette granted a special use permit with exceptions to Shoreline Place, Inc., the defendant, to construct an apartment building in an area zoned for townhouse residences. *York* and the other plaintiffs resided in the area and sought a declaration that the permit was an invalid exercise of the Village's authority. They sought an injunction against Shoreline to prevent it from exercising the special use permit. The trial court upheld the issuance of the special use permit, and the plaintiffs appealed. They contended, among other things, that the permit had expired because the enabling ordinance required that special use permits be exercised within six months of their being granted. The court rejected the plaintiffs' position and adopted the defendant's contention that it was plaintiffs' conduct in bringing the lawsuit challenging the ordinance which prevented defendant from exercising the special use. Relying on principles of estoppel, the court held that a party's conduct may estop that party from raising the bar of a statute of limitations. 148 Ill. App. 3d at 116-17.

■ Certainly, the plaintiffs in *York* and in the instant case were entitled to judicial review, assuming they had standing, an issue raised in the underlying appeal, of the issuance of the special use permit. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41

Ill. 2d 77, 241 N.E.2d 454.) However, to allow plaintiffs here or in any other case to exhaust an ordinance's time limitation by simply litigating the ordinance would be, as the trial court observed, inequitable. We believe judicial review should be afforded parties to resolve legitimate legal questions and not as a bar to the full enjoyment of the zoning relief granted.

In addition to the holding in *York*, we believe that counsel for the Smiths has made a persuasive argument supplemented by authority from other jurisdictions. In light of the paucity of Illinois authority and the exhaustive analysis of the issue presented by the Smiths, we adopt their argument as part of the opinion of the court on the issue. In *Tantimonaco v. Zoning Board of Review* (1967), 102 R.I. 594, 599-600, 232 A.2d 385, 388, the Supreme Court of Rhode Island rejected a contention by adjacent landowners that the time for commencing construction under a building permit should continue to run after they initiated an appeal which challenged the zoning which allowed construction of a gas station. The court said:

> "As heretofore noted, petitioners challenged the validity of that permit by seeking a review of the board's decision with the filing of their petition for certiorari on June 8, 1965. Although the filing of such a petition does not act as a stay, G.L. 1956, §45—24—20, common prudence understandably acts as a brake against incurring obligations, the benefits of which would be cancelled by an adverse decision of this court. Apart from the question as it may be affected by a change in the zoning regulations, we think it clear that the requirement of activating a permit set forth in an ordinance does not apply during such time as the legality of a permit is open to question by reason of litigation amounting to an appeal from the issuance thereof." 102 R.I. at 599-600, 232 A.2d at 388.

In *City of Cranston v. Carpionato* (1975), 115 R.I. 63, 67, 340 A.2d 134, 137, an individual challenged the validity of certain building permits and on appeal contended that the permits were revoked by a zoning ordinance which required that construction be commenced within 90 days of the date of the permit. The Supreme Court of Rhode Island rejected this argument, stating:

> "Although we agree with the city that *Tantimonaco v. Zoning Board of Review, supra,* is factually distinguishable from this case, we remain unconvinced that its reasoning is inapplicable here. In that case, we recognized the unlikelihood that a man of common prudence would incur obligations the benefits of which might be cancelled by an adverse decision of this

court, and we consequently concluded that an ordinance requiring the activation of a building permit within a fixed period ought not to apply '*** during such time as the legality of a permit is open to question by reason of litigation amounting to an appeal from the issuance thereof.'" (115 R.I. at 67, 340 A.2d at 137.)

The court noted that the validity of the building permits would remain uncertain as long as the litigation was pending, and, therefore, that all such time should be excluded in computing the time period within which construction was to commence.

Similarly, in *Gala Homes, Inc. v. Board of Adjustment* (Tex. Civ. App. 1966), 405 S.W.2d 165, 167, three building permits were issued to a developer which required construction to be completed within two years of issuance of the permits. The developer commenced construction, but approximately 14 months after issuance of the permits, certain persons appealed the issuance of the permits to the Board of Adjustment and litigation ensued. The trial court rejected the developer's argument that the time from the filing of the appeal to the final decision in the case should be excluded for purposes of completing construction. The Court of Civil Appeals of Texas reversed the trial court's ruling on this issue and held in favor of the developer:

"Inasmuch as the permits were prima facie valid, we reverse the judgment of the trial court and render judgment validating the permits. Further, we hold that the two year period within which the city ordinance requires that construction be completed should be tolled, commencing with the filing of intervenors' appeal with the Board and continuing until final judgment herein." 405 S.W.2d at 167.

The rationale of this foreign-jurisdiction authority is persuasive in our resolution of the issue of the authority of the trial court to toll the running of the time in the ordinance and the correctness of the holding in *York*. Here, as in *York*, it was the conduct of plaintiffs, HOPE, in filing suit to contest the Village's action which impaired the Smiths' ability to commence substantial construction. We view as disingenuous the remarks of counsel for the Village before the trial court that all the Smiths had to do to satisfy the construction time period was to hire one man and a bulldozer for one afternoon. In fact, the uncontested affidavits disclose expenditures by the Smiths in excess of $100,000 in pursuance of development plans and related expenditures for the environmental set-aside upon which the permit's issuance was conditioned. The trial court also heard unrebutted testimony that, indeed, the Village itself through its attorney would not issue a

building permit during the pendency of the trial of the underlying challenge to the ordinance. In fact, the building permit was not made available to the Smiths until several weeks before the expiration of the time limit but, nonetheless, while the instant underlying litigation was pending.

Further, we do not believe that the fact that the Smiths may have vested their right to proceed under the permit by the expenditure of substantial sums in reliance upon the permit issued (*Marziani v. Lake County Zoning Board of Appeals* (1980), 87 Ill. App. 3d 425, 429, 409 N.E.2d 118) can be said to vitiate their claim that to proceed with substantial construction during the pendency of litigation would have been imprudent. The legal resolution of the question of the effect of the expenditure of funds on the vesting of rights is not without peril. See, *e.g., First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 139-46, 361 N.E.2d 832.

Finally, the Smiths also maintain that the court had authority under the declaratory judgment statute to toll the running of the time in the ordinance. They contend that section 2—701(c) of Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701(c)) specifically provides for the granting of further relief after the declaration has been made, and they point to the committee comments (Ill. Ann. Stat., ch. 110, par. 2—701(c), Historical and Practice Notes, at 12-13 (Smith-Hurd 1983)) to the effect that supplemental, consequential, incidental affirmative relief is obtainable by motion in the same action and the same court which granted the declaratory relief in the first instance. They argue that the tolling of the running of time in the special use ordinance by the trial court was in furtherance of its original judgment. (*Mundo v. DeGrazio* (1966), 77 Ill. App. 2d 52, 222 N.E.2d 253; *Andrews v. City of Springfield* (1965), 56 Ill. App. 2d 201, 205 N.E.2d 798.) A decision to grant or deny a request for a declaratory judgment is a question that rests within the sound discretion of the trial court, whose determination will not be disturbed in the appellate court absent an abuse of that discretion. *Stone v. Omnicon Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 475 N.E.2d 223.

The remaining question, then, is whether the judgment of the trial court in tolling the running of the ordinance during the period of the litigation was an abuse of discretion. We conclude it was not. The Smiths prevailed before the Village in their petition for the issuance of the special use permit. They also prevailed in the trial court. Counsel for HOPE argued here and before the trial court that the Smiths could have commenced construction and waited for HOPE to obtain a

temporary restraining order with bond while the litigation proceeded. However, this approach is beset with the same time-limit constraints as the present litigation and the matter of tolling of the time would have to be resolved in any event.

Further, we see no prejudice to the Village or to HOPE arising from the trial court's judgment. The trial court simply enforced or implemented its original declaration by assuring that the Smiths would enjoy the benefit of the underlying judgment. We affirm the judgment of the circuit court in appeals Nos. 2—87—1010 and 2—87—1011.

NO. 2—87—0262

We now turn to the underlying substantive appeal. This litigation concerns an 11½-acre triangular parcel of unimproved real estate situated on the south side of State Route 22 in Lake Barrington, Lake County. It lies within a larger area bordered on the west by Kelsey Road and on the east by State Route 59 or more proximally, Harbor Road.

At the time of these proceedings, the adjoining property to the immediate east, west and south was also vacant and unimproved except for a high-pressure gas pumping station adjoining the subject property on its western property line. However, directly across State Route 22 and sharing the same westerly border as the subject property is the Stonehenge Golf Course, which extends easterly beyond the eastern tip of the triangular subject property along Route 22. West of Stonehenge and also on the north side on State Route 22, but set back about 600 feet, is the Good Shepherd Hospital complex, including the hospital and buildings housing doctors' offices. Abutting the Good Shepherd property to the west is the property of the Quaker Oats Company upon which is a farm-like research facility. To the east of Stonehenge on the north side of Route 22 is estate-zoned property improved with several residences.

Route 22 transcribes the north and east boundary of the triangular-shaped subject property. The property lying south of the parcel is zoned R-1 by Lake Barrington and appears from the record to be unimproved. The property lying west of the subject property is zoned "Estate" by Lake County and is directly south of the Good Shepherd Hospital and the Quaker Oats property and is essentially undeveloped. Thus, on the south side of Route 22, the adjoining property currently has no commercial applications except for the natural gas pumping station adjoining the western boundary of the subject property and a substantially developed industrial park about one-half mile to the southwest of the subject parcel.

Plaintiffs first argue that it is clear that the approval of the planned development of a special use for a professional office building on the subject property is totally unreasonable in light of the surrounding land uses and zoning. In particular, plaintiffs argue that there is no commercial development on the south side of State Route 22 for two miles in each direction. Plaintiffs acknowledge, however, that there is a high-pressure gas pumping station adjoining the subject property on its western property line and the industrial district to the southwest previously described. The trial court found that the existing uses of the property "nearby" the subject parcel were mixed, including: vacant; single-family residential; the natural gas pumping station; a private golf course; a hospital; medical office buildings; an office and research facility and an industrial park development to the southwest of the property. The court also found that the existing zoning of property "nearby" the subject property was mixed, including: R-1 single-family with a special use for golf course; SR—suburban residential with a variance for hospital and medical offices; E-Estate relating to the vacant property directly to the west of the subject parcel which is owned by Good Shepherd Hospital; E—Estate, R-1 single-family; C—golf course and club; OR—office and research; and M—manufacturing and industrial relating to the manufacturing district located to the southwest within one-half mile of the subject property. The court also found that the large parcel of property which is west of the subject property and presently zoned "E-Estate" by Lake County, if annexed by the Village would be automatically zoned OR—office and research based upon the Village's zoning plan.

■ Focusing on a more narrow aspect of plaintiffs' argument, namely, that this would be the first commercial incursion on the south side of Route 22 "for two miles in either direction," we observe that the scope of the review of surrounding uses and zoning relates to "nearby" property. While we are aware that a roadway can be a natural zoning border (*Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 273, 181 N.E.2d 96), we are unaware of any authority that would require the Village or the court on judicial review to ignore uses or zoning of property nearby but on the other side of the road. Additionally, it cannot be seriously argued that the high-pressure gas pumping station adjoining defendants' property is not a commercial application, nor can it be denied that there is a substantial industrial district serviced by Kelsey Road within a half mile of the subject property also lying south of, albeit not adjacent to, State Route 22. While we would not disagree with plaintiffs' argument that the existence of Good Shepherd Hospital and the golf course on the north side of Route 22

does not *require* that the subject property be used for commercial purposes, we would not agree that it was error for the Village and the circuit court to take into account the uses and zoning of nearby property on both sides of Route 22.

Plaintiffs next contend that the criteria to be applied in determining the validity of a special use permit are the criteria found in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65. The six factors are: (1) the existing uses in zoning of nearby property; (2) the extent to which property values are diminished by the restrictions; (3) the extent to which the ordinance promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owners; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of the land development in the area in the vicinity of the subject property. 12 Ill. 2d at 46-47.

Again, addressing the existing uses and zoning under the first *La Salle* criterion, plaintiffs emphasize that nearby properties are "overwhelmingly and clearly residential in character." However, as we have previously discussed, the findings of the trial court that the use and zoning is mixed are supported by the testimony and exhibits as to the use of nearby property and the aerial photograph depicting the existing zoning of nearby properties. We are unpersuaded by plaintiffs' arguments that the proposed use of the property by the Smiths is out of character with the established uses and the zoning of nearby properties.

The next *La Salle* factor discussed by plaintiffs is the extent to which property values are diminished by the particular zoning restrictions. Plaintiffs contend, without citation to the record in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), that there will be a substantial depreciatory effect on the properties of the individual plaintiffs and other residential homeowners in the area. The trial court found that the subject special use and development is not likely to have a depreciatory effect or any additional negative effect on the individual property owned by the plaintiffs. The court accorded greater weight to the opinions given by the Smiths' witnesses as to the effect of the special use and development on property values of the individual plaintiffs. The testimony of plaintiffs' witnesses concerning the depreciation that would result from the special use and development was contradicted by the evidence adduced by the Smiths, and the issue of credibility was properly resolved by the trial court as

indicated by its findings. Plaintiffs do not contend or demonstrate that their evidence was clear and convincing. Therefore, we conclude that plaintiffs failed to meet their burden on this issue.

■■ The next *La Salle* factor argued by plaintiffs is that the record contains "absolutely no evidence" of any promotion of the public welfare by reason of this zoning change, and contend that, in fact, the evidence establishes that the development will seriously damage the public welfare. Again, plaintiffs have failed to cite to the record for the factual basis for their assertions in violation of Supreme Court Rule 341(e)(7). (107 Ill. 2d R. 341(e)(7).) The Illinois Supreme Court has never held that the absence of a public necessity for a special use is alone a sufficient basis for the denial of the permit. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 81-83, 241 N.E.2d 454.) The trial court found, based upon the relative opinions of the expert witnesses of the parties, that there was a reasonable and fair difference of opinion as to the gain to the public as a result of the permitted special use and development, and that there has been minimal hardship shown as to the individual property owners as a result of the development. The Smiths cite to evidence in the record which established that the medical offices in the Good Shepherd complex are full and that there is no additional office space for physicians. Furthermore, Good Shepherd has no plans to build additional offices. Twelve to fifteen doctors have expressed an interest in buying office condominium space in the planned development. There is also evidence that by 1990 there will be between 70 and 126 specialty-care physicians in the Good Shepherd area, and that office space near a hospital is necessary to attract specialty-care physicians. The record discloses that condominium-type facilities are important because they establish permanency of location and stability for physicians' practices. It permits the physicians to design and equip the offices to the ultimate benefit of the patients. The development would increase the tax base of the subject property, which is in the interest of the public welfare. (*Bass v. City of Joliet* (1973), 10 Ill. App. 3d 860, 873, 295 N.E.2d 53.) There was also evidence that the value of the land as proposed to be developed would be substantially greater than if it remained in its present condition. (10 Ill. App. 3d at 873.) Thus, we conclude that even though defendants purchased the property with the knowledge that it was not zoned for their intended use, nonetheless, they would enjoy a significant financial benefit from their ownership of the property under the proposed development. In sum, contrary to plaintiffs' argument that "one seeks in vain for any evidence that the special use permit was required for the good or pro-

moted the public welfare," the evidence in the record permitted the trial court to make its finding that there was a fair difference of opinion as to the gain to the public. Its favorable finding for the Smiths on the issue was not against the manifest weight of the evidence; nor have plaintiffs met their burden of invalidating the presumption of validity of the ordinance by clear and convincing evidence.

■ The next *La Salle* factor discussed by the parties is the suitability of the subject parcel for the special use purposes. The law does not require that the subject property be totally unsuitable for the purpose classified, but it is sufficient that a substantial decrease in value of the property results from a classification bearing no substantial relation to the public welfare. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 47, 145 N.E.2d 65.) Plaintiffs contend that all the evidence in the record indicates that the subject property is suitable for single-family purposes, and that the evidence is clear that the property is not suitable for the commercial use proposed, again without citation to the record. Plaintiffs contend that the development would have a "devastating effect" upon the existing residential character of the area. The trial court found, given the relative opinions of the expert witnesses, that there is a reasonable and fair difference of opinion as to the suitability of the subject property for single-family residential purposes.

■ The focus of our examination of the suitability issue is whether or not the property is suitable for the proposed use, not its use under the prior zoning. (*Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, 458 N.E.2d 931.) Defendants argue convincingly, and with citation to the record, that there was extensive evidence that the location of the subject parcel in proximity with Good Shepherd Hospital provides an ideal location for medical offices; that its proposed colonial residential-style architecture will blend with the surrounding area; and that defendants' appraiser witness testified that the planned development is a very low intensity use for the size of the property. There was also testimony that its location on a major State route made the subject property particularly suitable for the intended purpose. Plaintiffs complain that the septic system will deposit unhealthy by-products of the practice of medicine and point to testimony that the effluent from the system will flow into the creek that transects the property. The Smiths complain that plaintiffs raise the argument about the septic system and traffic congestion but introduced no evidence on the subject, whereas the record discloses evidence that the septic system will meet the standards required by the Lake County regulations. Our examination of the record confirms that

plaintiffs failed to rebut the presumption of validity of the special use ordinance by clear and convincing evidence of the unsuitability of the subject parcel for the proposed use. As our supreme court observed in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65, "[t]here is naturally a conflict of testimony in cases of this nature and the credibility of witnesses is of great importance. The triers of fact are in a superior position to that of a reviewing court in such a situation. When testimony is contradictory in a trial without a jury the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless manifestly against the weight of the evidence." (12 Ill. 2d at 48, 145 N.E.2d at 70.) We conclude that plaintiffs failed to satisfy by clear and convincing evidence that the subject property was unsuitable for its intended use.

 █ Plaintiffs contend that the final *La Salle* factor, the length of time the land had been vacant under its previous zoning, had little or no application under the instant facts because the property has remained undeveloped for many reasons. Nonetheless, the Smiths' witness, William McCann, testified that absent the special use, the Smith property would, in all likelihood, remain vacant and undeveloped because there is an abundance of property in the area better suited for single-family development. Since the plaintiffs have cited neither the record nor authority for the argument they seek to advance, we consider the issue waived under Illinois Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7); *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 419, 255 N.E.2d 900) and, thus, affirm the trial court's finding that the subject property has remained vacant and undeveloped as R-1 zoning without a permitted special use for a period of time while other properties in the immediate area have been developed for residential, hospital-related and office and research purposes.

██ Defendants Smiths do not contest plaintiffs' contention that in addition to the *La Salle National Bank* criteria, the courts have also considered the community needs for the proposed use and the care with which the community has planned its land use. However, the absence of a public need is not sufficient to invalidate the special use ordinance. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454.) Rather, public need means "expedient" or "reasonably convenient" to the public welfare. (*National Pride Equipment, Inc. v. Village of Niles* (1982), 109 Ill. App. 3d 639, 440 N.E.2d 1053.) Plaintiffs contend that the evidence makes it absolutely clear that there is no need for additional office buildings based on the testimony of its experts. The trial court found that, given the

relative opinions of the expert witnesses, there was a reasonable and fair difference of opinion as to the public need for the proposed use intended for the subject parcel. The Smiths reiterate their reliance on testimony in the record that there is a current need for medical specialists in the Good Shepherd Hospital area, that by 1990 there will be a need for an additional 70 to 126 specialty-care physicians, and that, in spite of the need for them, the hospital has no plans to build additional offices in the area. Additionally, 12 to 15 doctors have expressed interest in buying office condominium space in the planned development. We conclude that the trial court's finding on the question of public need was not against the manifest weight of the evidence and that the plaintiffs have not established by clear and convincing evidence that there is no need for the proposed use.

The next major argument advanced by plaintiffs for the invalidity of the special use permit is that it was based on the Lake Barrington Zoning Ordinance which is fatally defective. Plaintiffs observe that since the Village is a non–home-rule municipality, it derives its power to zone solely from the provisions of section 11—13—1.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—1.1). The part of the statute upon which plaintiffs rely provides:

> "The corporate authorities of any municipality may in its ordinances passed under the authority of this Division 13 provide for the classification of special uses. Such uses may include but are not limited to public and quasi-public uses affected with the public interest, uses which may have an unique, special or unusual impact upon the use or enjoyment of neighboring property, and planned developments." (Ill Rev. Stat. 1985, ch. 24, par. 11—13—1.1.)

Plaintiffs contend that section 16—5 of the Lake Barrington Zoning Ordinance (Lake Barrington Zoning Ordinance (1986), 16—5) is invalid because it exceeds the scope of the municipality's authority to grant special uses under the State statute. The relevant ordinance provides:

> "Special uses. The development and execution of a comprehensive zoning ordinance is based upon the division of the Village into districts within any one of which the use of land and buildings, and location of buildings or structures as related to the land are essentially uniform. It is recognized, however, that there are Special Uses which, because of their unique character, cannot be properly classified in any particular district or districts without consideration, in each one, of the impact of those uses upon neighboring lands and upon the public need for the particular use in the particular location. Such Special Uses fall

into two categories:

 (1) uses operated either by a public agency or publicly-related utilities, or uses traditionally affected with a public interest and

 (2) uses entirely private in character but of such a nature that the operation may give rise to unique problems with respect to their impact upon neighboring property or public facilities.

 Special uses shall be considered and acted upon in the manner prescribed herein for amendments to this ordinance. In approving a special use, the Corporate authorities may impose such additional conditions not otherwise found in this ordinance as is considered necessary to protect the public health, safety and welfare." Lake Barrington Zoning Ordinance (1986), §16—5.

 ■■■ Plaintiffs first argue that special uses are only those which "may have a unique or special or unusual impact upon the use or enjoyment of neighboring property." A reading of the enabling statute discloses that plaintiffs' argument is based upon an unreasonably narrow and misleading quotation taken out of context. As quoted earlier, the enabling statute provides that "[s]uch uses may include *but are not limited to* \*\*\* uses which may have a unique, special or unusual impact upon the use or enjoyment of neighboring property." (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—1.1.) We must, therefore, reject plaintiffs' argument as it is based upon a misreading of the State statute. We deem waived the plaintiffs' further argument that the special use ordinance violates the due process provisions of the constitution by reason of plaintiffs' failure to cite authority for its argument in violation of Supreme Court Rule 341(e)(7). (107 Ill. 2d R. 341(e)(7); *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133.) We affirm the finding of the trial court that the Village's zoning ordinance contains adequate standards in determining whether a special use should be granted, and there has been no showing that the standards provided are contrary to statute or constitutional mandate. In light of our analysis, we need not determine whether the rationale of the trial court in relying on *Lake Barrington Citizens Committee, Inc. v. Village of Lake Barrington* (1974), 19 Ill. App. 3d 648, 312 N.E.2d 337, was correct as we may affirm on any basis appearing in the record. *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 478 N.E.2d 384.

 Plaintiffs challenge the ordinance, No. 86—0—6, which granted the special use as invalid on its face because it fails to meet the re-

quirements of the Village zoning ordinance. As plaintiffs aptly point out, the law is well established that a special use for a planned development must meet the requirements established under the community's zoning ordinance. (*Rode v. Village of Northbrook* (1984), 123 Ill. App. 3d 436, 462 N.E.2d 843; *Geneva Residential Association, Ltd. v. City of Geneva* (1979), 77 Ill. App. 3d 744, 397 N.E.2d 849.) Specifically, plaintiffs contend that the Village's zoning ordinance requires that a special use ordinance set forth findings that a more efficient, more economical, more attractive and more varied arrangement of structure type and open spaces will be achieved by the special use. In particular, plaintiffs complain that the plan of development shows only one building and concludes, again without citation to authority or the record, that "the concept of planned development requires more than a single building on a single parcel." We also deem this argument waived. 107 Ill. 2d R. 341(e)(7).

Plaintiffs further argue that the ordinance failed to set forth facts that the regulations and requirements governing the types of uses for that particular tract are the only zoning and development requirements appropriate for that tract. Plaintiffs conclude that "the evidence in the record indicates clearly that the property is suitable and can be developed for single family purposes." However, plaintiffs fail to cite to the record for support for this factual observation, and we decline to search the record for any evidence in aid of plaintiffs' assertions. (*People v. Ramirez* (1983), 98 Ill. 2d 439, 472, 457 N.E.2d 31.) In any event, were we to consider plaintiffs' arguments, we would nonetheless hold that the trial court's finding that the Village's zoning ordinance does not require the inclusion of specific findings of fact in an amendatory ordinance permitting a special use was not manifestly erroneous since action requiring such specific findings (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—1.1), by its terms, does not apply to the ordinance in question. Furthermore, we affirm the trial court's finding that the special use permit does not constitute a variance from the parking requirements otherwise required under the Village's zoning ordinance. There is no minimum parking requirement for special use-planned development in an R-1 zone in the Lake Barrington Zoning Ordinance, and the permit issued provided for paved parking facilities in excess of the minimum required under B-1 zoning; therefore, the permit does not amount to an improper delegation of authority as contended by plaintiffs. As in *York v. Village of Wilmette* (1986), 148 Ill. App. 3d 108, 498 N.E.2d 712, the zoning amendment created a special use and not a variation.

We conclude that the special use permit enacted by the Vil-

lage in the instant case enjoys a strong presumption of validity which may be overcome only by clear and convincing evidence that it is arbitrary, unreasonable, and substantially unrelated to the public health, safety or welfare. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) We were aided in our review of this case by the detailed findings of fact and conclusions of the trial court. We were further assisted in our review by the consistent citation to the record and legal authority in the brief of defendants. Our review of the relevant record and authorities relied upon by the parties demonstrates as to each of the issues raised by the plaintiffs that they failed to sustain their burden of adducing clear and convincing evidence overcoming the presumption of validity of the ordinance. (12 Ill. 2d 40, 145 N.E.2d 65.) Further, the record demonstrates that where the issues below were contested, the findings of the trial court were not against the manifest weight of the evidence.

We affirm the judgment of the circuit court of Lake County.

Affirmed.

HOPF and DUNN, JJ., concur.