Southern Collegiate Institute of Albion, Illinois, Appellee, v. The Estate of Cyrus M. Avery, Appellant.

Gen. No. 5339.

1. EVIDENCE—*burden to show disqualifying interest of witness.* The presumption is that one offered as a witness is competent to testify, and the burden is therefore upon one who objects to state and prove the grounds of his objection.

2. EVIDENCE—*what interest disqualifies witness; what not.* To render witnesses incompetent where the adverse party sues or defends in a representative capacity, their interest must appear to be present, certain and vested, and not an interest uncertain, remote or contingent.

3. EVIDENCE—*how disqualifying interest to be ascertained.* In order to determine whether or not a witness offered in a cause possesses a disqualifying interest, the court should permit his examination upon a *voir dire.*

4. EVIDENCE—*who not disqualified by virtue of interest.* A paid officer or agent of a corporation is not for that reason necessarily incompetent where the adverse party sues or defends in a representative capacity.

Contested claim in court of probate. Appeal from the Circuit Court of Knox county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910.

WILLIAMS, LAWRENCE, WELCH & GREEN, for appellant.

FLETCHER CARNEY and JAMES W. CARNEY, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

The Southern Collegiate Institute of Albion, Illinois, was incorporated in 1891. It is a non-sectarian organization, its only object being educational. It is supported mainly by donations, and its management is vested in a board of trustees. Frank B. Hines was its president and J. W. Strawn was its treasurer and a stockholder in the bank in which its funds were deposited. Hines and Strawn were sureties on a note of the Institute for money borrowed of the bank in which Strawn was stockholder. Hines received a salary as president of the Institute, and Strawn served as treasurer without pay. On June 27, 1905, Cyrus M. Avery executed a will, the seventh clause of which bequeathed to the Institute one-tenth of the remainder of the income of the estate, which, it is claimed, was one-twentieth of the whole income of the estate. He died September 15, 1905. On October 20, 1906, the Institute filed a claim in the County Court of Knox county against his estate and obtained a judgment for $5,609.68. An appeal was taken by the executors of his estate from that judgment to the Circuit Court of said county, and a trial there resulted in a verdict for the Institute for $4,611.10. A motion for a new trial was denied. Judgment was entered on the verdict and the executors prosecute this appeal.

The judgment rests upon the testimony of Hines and Strawn. Hines testified that Avery said to him in May, 1903, and again in 1904, that, if he would bring S. H. Ingersoll of Sandoval, Illinois, and him (Avery) together, and that if, as a result of such meeting, Ingersoll would remove his manufacturing plant from Sandoval to Galesburg, Illinois, and allow Avery to organize a company for the purpose of manufacturing from certain patents owned by Ingersoll, that Avery would give the Southern Collegiate In-

stitute, or Hines individually, $5,000 of the stock of the new company. Strawn testified that he was present at a conversation in which Avery said to Hines, "If you will bring Ingersoll and I together, and we can induce him to remove his plant from Sandoval to Galesburg, and he will permit me to organize it, I will give you or the college $5,000 of the stock." Hines did bring Ingersoll and Avery together and Ingersoll's plant was removed to Galesburg and a new corporation was organized by Avery. The court admitted the testimony of Hines and Strawn over appellant's objections, and refused to admit the will of Avery in evidence, and also refused to admit proof of what one-twentieth of Avery's estate would amount to. At the close of Hines' testimony, and also at the close of Strawn's testimony, appellant moved the exclusion of such testimony on the ground that said witnesses were interested in the result of the suit. These motions were denied. Appellant sought to show that the salary of Hines was dependent in part upon the money to be collected from Avery's estate, but was not permitted to do so. At the close of all the evidence, appellant renewed its motion to strike from the record the evidence of Hines and Strawn, and asked for a directed verdict in favor of appellant, both of which motions were denied.

We do not understand the ground of appellant's contentions to be that Hines and Strawn were incompetent as witnesses because they were officers of the Institute, but that Hines' salary might be dependent in part upon the money that might be collected from Avery's estate, and because they might possibly be called upon to pay the note upon which they were sureties. The presumption is, that one offered as a witness is competent to testify, and the burden is, therefore, upon one who objects to state and prove the grounds of his objection. Campbell v. Campbell, 130 Ill. 466; Boyd v. McConnell, 209 Ill. 396. The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. To render Hines and Strawn incompetent as

witnesses against appellant, it must appear that they had a present, certain and vested interest in the result of the suit, and not an interest uncertain, remote or contingent. 1 Greenleaf on Evidence, secs. 390, 408 and 409; Illinois Mutual Insurance Company v. Manufacturing Co., 1 Gilm. 236: Curtenius v. Wheeler, 5 Gilm. 462; Feitl v. Chicago City Railway Co., 211 Ill. 279. Strawn had no direct interest in the result of the suit, unless the bare possibility of his being called upon to pay a note could be considered a direct interest within the meaning of the statute. Of this, it was not shown there was the slightest probability. In Curtenius v. Wheeler, *supra,* it was held that a surety for a debt was a competent witness in a suit on a note given as collateral security for the same debt, for the reason that there was only a possibility, not a certainty, that the surety would be required to pay the debt. The status of Hines was no different from that of Strawn, except that he received a salary for his services.

The court refused to permit various questions to be asked by which it was sought to show that appellee might not have sufficient funds to pay Hines' salary, without the amount of this claim, and that the money from this claim might be necessary to pay the note upon which Hines and Strawn were sureties, and this evidence was not admitted. In order to investigate these questions, it would have been necessary to go into a complete investigation of the value of all the property which appellee owned, and all its resources by way of gifts and tuition, and its liabilities. We are of the opinion that it was never intended that a court should be required to make such an investigation in order to determine whether an officer of such a corporation was directly interested in the result of a suit, if called as a witness, as in this case. Such a rule would greatly complicate trials, and would lead to the trial of remote issues. If such an investigation had been permitted, and it had appeared that, upon a dissolution of the corporation and the subjection of all its property to the payment of its debts, there would not be enough to pay them in full, and that Hines might thereby lose some part of his

salary, or that Hines and Strawn might have to pay the note, we are of the opinion, that the interest would have been so remote and uncertain as not to have disqualified them as witnesses. It is urged that the court erred in not permitting the examination of Hines and Strawn as to their competency before they testified in chief. The court should have per‑ mitted the preliminary examination, but, as their cross ex‑ amination discloses their interest, if any, to be contingent and remote, no harm resulted to appellant from the irregu‑ larity of the examination.

Appellant argues that Hines might have filed a claim against the estate on his personal account, and that his failure to do so amounted to a release of his interest for the purpose of testifying within the meaning of section 7 of the Evidence Act. The last interview that Hines had with Avery was in May, 1905, and he testified, that, at that time, he told Avery that he had come to Galesburg to find out whether he (Avery) was going to turn that stock over to the college at Albion, and that Avery told him he intended to do so. The stock of the new company was not issued until after Avery's death. Hines never made any claim for the stock in his own behalf, either to Avery or against the estate. The statutory provision referred to is against a release made for the purpose of making competent a witness otherwise in‑ competent. Hines never was incompetent in a suit in behalf of the Institute, and certainly a disclaimer of any personal claim against the estate would not have the effect to make him incompetent. Campbell v. Campbell, *supra.*

Appellant argues that there is no reason for assuming that Avery intended to do more than he had done in his will, or that he felt he was obligated in any way to the Insti‑ tute beyond the provision therein contained. His will, which was offered in evidence in support of this theory, was not admitted. The portion of the will abstracted does not show what the bequest to appellee would amount to, neither does it make any reference to the gift of stock, which it is claimed was promised to appellee. It, therefore, had no bearing on the issue in this case and was properly rejected.

If, as appellant argues, it is dangerous to permit paid agents and officers of a corporation of this kind to prove an oral contract made by a deceased person with such an agent or officer, as it might subject estates to pay unjust demands without any possibility of a successful defense, that question is for the consideration of the legislature and not the courts.

Finding no reversible error of law in the record the judgment is affirmed.

*Affirmed.*