THEODORE R. HELLER, Plaintiff-Appellant, v. JONATHAN INVESTMENTS, INC., et al., Defendants-Appellees.

First District (4th Division)   No. 83—2952

Opinion filed July 25, 1985.

JIGANTI, P.J., dissenting.

Bloch & Bloch, of Chicago, for appellant.

Denkewalter & Associates, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff brought an action for rescission of two real estate deeds and the imposition of a constructive trust, claiming that the deeds were executed under duress exerted upon him by decedent in breach of their fiduciary relationship. The action was brought subsequent to decedent's death, some four years after the execution of the deeds.

At trial, certain evidence was excluded on the basis of hearsay and the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 110, par. 8—201). Defendant, decedent's corporation, moved for a directed finding at the close of plaintiff's case pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110). The trial court, finding that plaintiff had failed to present such "clear and convincing" evidence as is needed to set aside a deed, granted defendant's motion. Plaintiff now appeals.

We reverse the decision of the trial court and remand for further proceedings.

BACKGROUND

In 1973, plaintiff, Theodore R. Heller, was appointed executor of his father's estate and received three parcels of property as a residuary trustee under a trust created under his father's will. Only two of those parcels are at issue here. Those two properties were appraised in 1973 at values of $85,700 and $34,500, respectively.

Pursuant to the terms of his father's will, plaintiff was to assume management of the two properties. Management duties included the collection of rents, the payment of expenses, the negotiation of leases, the arrangement for repairs, and the general maintenance of the buildings. Prior to his father's death, plaintiff, whose lifetime occupation had been that of a supervisor in the department of consumer sales, weights, and measures for the city of Chicago, had never managed commercial real estate nor performed any of the managerial duties expected of him.

Shortly after assuming management of the properties, plaintiff began having serious problems with his buildings and turned to the decedent, John Reynolds, for advice. Reynolds, at that time, was in the real estate business. Plaintiff consulted with Reynolds with increasing frequency subsequent to assuming management of the properties.

In 1975, one of the properties under plaintiff's management re-

ceived a report citing it with a myriad of building code violations. At a loss as to how to handle the situation, plaintiff again turned to Reynolds for help. In reliance on Reynolds' advice, plaintiff later changed attorneys and hired a different accountant.

In 1976, plaintiff was seriously injured in an auto accident and required several operations. In December 1976, Reynolds formed Jonathan Investments, Inc., an Illinois corporation of which he was the director, president, and sole stockholder until his death in 1982. Reynolds' daughter, defendant Gerri Sue Livers, served as the corporation's secretary. After undergoing an operation in November 1977, plaintiff was permanently disabled. At that time, plaintiff turned over the control, operation, and management of the two properties to Reynolds.

Adam Bourgeois, an attorney who represented one of the lessees of the subject properties, testified that in May 1978, he entered into discussions with plaintiff and Reynolds for the purpose of negotiating a lease. Plaintiff told him to continue negotiations with Reynolds, with whom Bourgeois had further conversations. Bourgeois' testimony was corroborated by that of plaintiff, who testified that as of November 1977, Reynolds negotiated leases and gave instructions to attorneys in connection with the subject properties.

Milton Tornheim, the attorney who incorporated Jonathan Investments, Inc., in 1976, testified that he had seen plaintiff and decedent together and had heard their conversations and observed their conduct prior to the execution of the deeds in 1978. Tornheim stated that the decedent treated plaintiff, in regards to business, as if he were an incompetent.

In December 1978, plaintiff executed two quitclaim deeds, conveying the two properties at issue to defendant, Jonathan Investments, Inc. Plaintiff testified that he received no consideration for the transfer of the two properties and that he executed the deeds because the decedent had placed him "in fear of [his] life." Plaintiff stated that he had at one time considered Reynolds a friend but that he ceased considering him as such early in 1978 when Reynolds began to "beat and bulldoze" him. Plaintiff testified that Reynolds began in 1977 to advise him but that gradually the advice became more and more coercive, until Reynolds told plaintiff he was a "dumb [S.O.B.]" and took over management of the properties, telling plaintiff who to write checks to, who to hire, and how to maintain the buildings.

Subsequent to the execution of the deeds, plaintiff turned over the ledger books and the checkbook for his trust to Reynolds. Plaintiff continued to collect rents, check the premises, and do repairs on the

buildings. Plaintiff testified that he was never paid by Jonathan Investments, Inc., for the services he performed.

Evidence was introduced of a check for $25,000 made out to plaintiff and signed by Reynolds. Plaintiff stated that he cashed the check, deposited $12,500 into his account, and gave the other $12,500 to Reynolds, upon his direction. Plaintiff testified to receiving various checks from defendant for expenses related to the properties. Other evidence introduced at trial included a check in the amount of $7,824.26 payable to Reynolds and dated December 8, 1978, two days after the execution of the deeds, written on plaintiff's trust account and signed by plaintiff. The check stub reads, "For merged interest on merged notes 1972 thru 1975-1976-1977 thru and including December 8, 1978, total $60,000 accrued." The trust ledger book contains a corresponding entry dated December 8, 1978, which reads, "Borrowed money interest payment (borrowed 1972 thru 1978) from John Reynolds ($60,000 borrowed) Interest $7,824.26." Plaintiff testified that he never borrowed money either from Reynolds personally or from Jonathan Investments, Inc.

Gerri Sue Livers, Reynolds' daughter and the executor of his estate, testified that from the date of Jonathan Investments, Inc.'s incorporation in 1976 until her father's death in 1982, she was the corporation secretary and that only she and her father were authorized to sign checks on the corporate account. Livers testified that she had investigated her father's personal income, expenses, and debts prior to his death and that she had reviewed the financial affairs and transactions of Jonathan Investments, Inc., of which she is currently the sole director. Livers stated that she did not believe that the corporation had ever lent anyone any money. She further testified that she had no knowledge of any consideration paid to plaintiff in exchange for his execution of the real estate deeds to defendant.

Also offered into evidence were 1982 appraisals of the properties at issue. The values shown for the two parcels were $300,000 and $88,000, respectively.

Defendant moved for a directed finding at the close of plaintiff's case, pursuant to Code of Civil Procedure section 2—1110 (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110). The trial court found that plaintiff's evidence was not of the "clear and convincing" quality required to set aside a deed and consequently granted defendant's motion. Plaintiff now appeals.

OPINION

■ In ruling on defendant's motion, in a bench trial, for a di-

rected finding at the close of plaintiff's case, the trial court properly looked to *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43, in which our supreme court enunciated the standard to be applied in ruling on motions made pursuant to Code of Civil Procedure section 2—1110 (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110), as follows:

> "\*\*\* When a defendant, as here, moves for judgment under section [2—1110], the trial judge must first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case. If he has not, the court should, without more, grant the motion and enter judgment in the defendant's favor.
>
> If, however, the plaintiff has made out a *prima facie* case, the trial judge \*\*\* must then weigh the plaintiff's evidence as aforesaid. This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155, 407 N.E.2d 43.

On appeal of the granting of defendant's motion made in a nonjury trial at the close of plaintiff's case, the reviewing court must similarly determine whether the trial court erred in deciding that plaintiff failed to make out a *prima facie* case. (*Geiger v. Zikic* (1980), 81 Ill. App. 3d 1016, 401 N.E.2d 1260.) The decision of the trial court will not be reversed on appeal unless it is contrary to the manifest weight of the evidence. *Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 452 N.E.2d 742.

It is abundantly clear from our reading of both the trial court standard for ruling on and the appellate court standard for review of a ruling on a motion for a directed finding at the close of plaintiff's case that the pivotal focus is the *prima facie* case. The *Kokinis* court defined a *prima facie* case as one in which the plaintiff has presented at least *some* evidence on every element essential to his cause of action. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 51, 407 N.E.2d 43.) "some" evidence has been defined as more than a mere scintilla. *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 427 N.E.2d 974.

Although the trial court in the instant case correctly acknowledged the standard to be used in ruling on defendant's section 2—1110 motion, it applied a different and more stringent standard, requiring plaintiff to present "clear and convincing" evidence. While the

"clear and convincing" standard may be the correct one to apply when deciding certain substantive issues at the close of the entire case, *Kokinis* unequivocally informs us that this is not the proper standard to apply when ruling on motions for a directed finding made in a nonjury trial at the close of plaintiff's case.

The application of this exacting standard of proof (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 398 N.E.2d 198) at this stage of the proceedings requires plaintiff to carry a far greater burden than that set forth in *Kokinis*. There can be little doubt that the quantum of proof which leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question (*Galapeaux v. Orviller* (1954), 4 Ill. 2d 442, 123 N.E.2d 321) or leads but to one conclusion (*Johnson v. Johnson* (1953), 1 Ill. 2d 319, 115 N.E.2d 617) is a considerably greater quantity than "some."

It is apparent from the trial court's repeated references to the requirement that plaintiff present evidence that is "clear and positive," "strong and convincing" and "clear" and "convincing" that an erroneous standard of proof was here applied. In such instances, to enable the finder of fact rather than the reviewing court to reweigh the evidence presented by plaintiff in light of the correct standard, the proper procedure is to reverse and remand for further proceedings. (*In re Estate of Regan* (1979), 79 Ill. App. 3d 8, 398 N.E.2d 198.) This, then, is the procedure we will follow.

We do, however, feel it necessary to address certain of the evidentiary issues raised on appeal in order to clarify upon which evidence the trial court may properly determine whether plaintiff has indeed established a *prima facie* case.

■ We first address plaintiff's contention that the trial court erred in finding that no fiduciary relationship existed between plaintiff and the decedent. While it is not our province to decide this issue in the first instance on review, in light of the evidentiary standard yet to be applied by the trial court on remand, we see the need to point out that there are two distinct ways by which a fiduciary relationship may be proved.

A fiduciary relationship may be proved either by clear and convincing evidence that shows a special confidence reposed on one side and a resulting superior knowledge and influence exerted by the other; or, a fiduciary relationship may exist as a matter of law. (*Hubbard v. Schumaker* (1980), 82 Ill. App. 3d 476, 402 N.E.2d 857.) A fiduciary relationship exists as a matter of law between principal and agent. (*Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 147 N.E.2d 69.) If the evidence shows that one acting for another under circumstances

implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569.) Moreover, a *prima facie* case of agency may be created by inference or presumption. *St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 420 N.E.2d 478.

At this stage of the proceedings, to survive defendant's section 2—1110 motion, plaintiff need only establish a *prima facie* case. Thus, if the trial court finds that plaintiff has presented some evidence showing fiduciary relationship, either by circumstances or as a matter of law, the court should correspondingly find that plaintiff has carried his burden and deny defendant's motion.

■ We next address plaintiff's contention that the trial court erroneously excluded evidence on the basis of the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 110, par. 8—201). The Dead Man's Act has recently been interpreted by our supreme court as disqualifying the testimony by (1) interested persons (2) only to the extent that the testimony would be to a conversation with the deceased or an event which took place in the presence of the deceased. (*In re Estate of Babcock* (1985), 105 Ill. 2d 267.) The interest which renders a witness incompetent to testify must be such that pecuniary gain or loss will come to the witness as an immediate result of the judgment. (*In re Estate of Truman* (1975), 32 Ill. App. 3d 886, 336 N.E.2d 766.) The burden of showing that a witness is interested and therefore disqualified to testify rests on the one asserting the objection. *Southern Collegiate Institute v. Avery's Estate* (1910), 157 Ill. App. 568.

In the instant case, plaintiff asserts that the trial court erred in excluding certain testimony of Beverly Kuhnen and Milton Tornheim. Kuhnen is a former girlfriend of Reynolds who had no involvement in the actual operation of Jonathan Investments, Inc., and testified that she had no interest in the outcome of the litigation. Despite a suggestive statement by defendant that Kuhnen did not receive a share of Reynolds' estate, defendant has offered no evidence that Kuhnen is an interested person such as to disqualify any of her testimony under the criteria of the Dead Man's Act. A motive to offer testimony does constitute a direct and immediate interest in the judgment. Any testimony of Kuhnen's excluded on the basis of the Dead Man's Act was therefore error.

■ Similarly, defendant has offered no evidence to sustain its burden of proving that Milton Tornheim, who represented Heller in the administration of his mother's estate and testified that he had no interest in the outcome of the litigation, was an interested person. We

therefore find that the exclusion of any testimony by Tornheim on the basis of the Dead Man's Act was also error.

While it is clear that the testimony in question should not have been excluded on the basis of the Dead Man's Act, the record suggests that most, if not all, of the court's rulings on the admissibility of testimony were based either on both the Dead Man's Act and hearsay objections or on hearsay objections alone. Specifically, hearsay objections were sustained to exclude testimony offered by Beverly Kuhnen and Milton Tornheim regarding the decedent's treatment of plaintiff both prior to and subsequent to plaintiff's execution of the subject deeds. Plaintiff asserts that such testimony is admissible and relevant to show his state of mind both in regard to his execution of the deeds and to his failure to bring suit prior to Reynolds' death. When statements are offered for a purpose such as those posited by plaintiff, they fall outside the purview of the hearsay exclusion.

■ An out-of-court statement offered as proof of the matter asserted therein is hearsay and is inadmissible. (*Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022.) However, when the out-of-court statement is used not as evidence of the fact asserted, but as circumstantial evidence for another purpose, the hearsay rule does not apply. (*Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 305 N.E.2d 648.) Wherever an utterance is offered as evidence of the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of the statement, and the statement is therefore admissible in regards to the hearsay rule. Wigmore, Evidence sec. 1766, at 250-51 (Chadbourne rev. ed. 1976).

The hearsay rule interposes no obstacle to the introduction of statements by one person as circumstantial evidence of another person's belief as to the violent character or intentions of the speaker (Wigmore, Evidence sec. 1789, at 319 (Chadbourne rev. ed. 1976)), particularly in regard to explaining that person's belief as the motive for his subsequent actions. (*People v. Canamore* (1980), 88 Ill. App. 3d 639, 411 N.E.2d 292.) In such cases, the out-of-court statement is offered to show the reaction of the party to whom the statement was made and is not subject to the exclusionary impact of the hearsay rule. S. Gard, Illinois Evidence Manual R. 12.03 (2d ed. 1979), citing, *Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 305 N.E.2d 648.

In the instant case, testimony was elicited from Kuhnen and Tornheim regarding Reynolds' poor or violent treatment of plaintiff. Such testimony is relevant to show plaintiff's reaction to Reynolds' statements or conduct, the basis for his belief that his life was in dan-

ger, and his motive for executing the deeds at issue. When offered for these purposes, the hearsay rule is not applicable and the utterances are admissible as circumstantial evidence of these nonhearsay purposes. Where as here, valuable properties have been transferred under enigmatic circumstances that raise serious questions as to whether there was in fact any consideration given for the execution of the deeds, the motive of the transferor is both relevant and material. Any testimony offered to show plaintiff's motive should therefore have been admitted.

In light of the above considerations, we reverse and remand to the trial court for further proceedings consistent therewith.

Reversed and remanded.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:
The majority finds that the trial court in directing a finding at the conclusion of the plaintiff's case improperly applied the standard in ruling on that motion. The standard is set out in Illinois Code of Civil Procedure, section 2—1110 (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110) and in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43. I disagree with the majority for two reasons. First, the parties never raised an improper standard as an issue before the trial court nor in fact have they done so in this court. Other than for jurisdictional reasons, a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.) Secondly, it is quite understandable why the parties did not raise improper standard as an issue, because it is in fact not an issue. The trial court had a total grasp of the law and applied it to the facts over which it had a complete command.

At the conclusion of the plaintiff's case, the court noted that a motion was made under section 2—1110 of the Code of Civil Procedure, that is, a motion to find for the defendant at the conclusion of the plaintiff's evidence. That section provides:

"Motion in non-jury case to find for defendant at close of plaintiff's evidence. In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the

motion is favorable to the defendant, a judgment dismissing the action shall be entered." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.)

The trial court then noted that *Kokinis* provides that the trial court must first establish and satisfy itself that the elements of a cause of action have been proved and that the plaintiff's testimony and evidence establishes a *prima facie* case. the court further noted that if the court finds that no *prima facie* case has been established, it must direct a finding without delay, but that if the court finds that the evidence presented by the plaintiff establishes a *prima facie* case, the court must then weigh the evidence. That is of course a proper statement of the law.

Where I believe the majority erred is in its reading of the trial court's reasons for its decision which culminated in the judgment order. The majority reads the trial court's findings and determines that the trial court found that the plaintiff did not make out a *prima facie* case. According to the majority, the trial court used a standard of clear and convincing evidence, which the majority finds as inappropriate in determining if a *prima facie* case is made out by the evidence. Regardless of the legal merits of that contention, I read the trial court's findings differently. In my estimation, the trial court found that indeed there was a *prima facie* case. After it made that finding, which it was required to do under section 2—1110 of the Code of Civil Procedure, the trial court weighed the evidence and found that the evidence was insufficient to sustain a judgment in favor of the plaintiff.

In reaching my conclusion that the trial court found that there was a *prima facie* case, I note that the trial court specifically commented on the code of Civil Procedure and on *Kokinis*. The court then analyzed the evidence in great detail and made specific findings that in its view a fiduciary relationship had not been established and that the evidence was not clear and convincing that there was any duress. In conclusion, the trial court stated that in order for the plaintiff to prevail in the relief he requested, the plaintiff "must do so on the weight and persuasion of his own testimony. He has failed to meet the quality of proof required for such relief."

The above leads only to the conclusion that the trial court read the Code of Civil Procedure and *Kokinis* like a road map and never strayed. The majority should not have gratuitously raised this inappropriate issue. This cause should be considered on the merits as briefed by the parties.