*In re* MARRIAGE OF DONNA R. SHANER, n/k/a Donna R. Bott, Petitioner-Appellant, and ROBERT L. SHANER, Respondent-Appellee.

First District (3rd Division)   No. 1—90—0639

Opinion filed August 11, 1993.

Sandra K. Burns, of River Forest, for appellant.

No brief filed for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Petitioner, Donna R. Shaner, n/k/a Donna R. Bott, and respondent, Robert L. Shaner, were divorced on April 17, 1977. At that time, the parties entered into a property settlement agreement (agreement)

which was incorporated into the marital dissolution judgment. Petitioner contended that her share in the marital home, which was specified in the agreement, had been miscalculated. Petitioner filed a petition for reformation of the agreement. The petition was amended on three separate occasions. Respondent later filed motions to dismiss petitioner's petitions for reformation and modification of the judgment. After a hearing, the court denied respondent's motions and set the cause for a trial. At the close of petitioner's case, respondent moved for a directed finding. Petitioner then filed a motion to amend the pleadings to conform to proof wherein she alleged that the pleadings should be amended to the extent that they would permit the court to conclude that there was a mutual mistake or that there were fraudulent misrepresentations made by respondent concerning the incorporation of a provision in the agreement which defined her equity share in the marital home. On February 7, 1990, the trial court entered an order dismissing petitioner's third amended verified petition and granting respondent's motion for a directed verdict. Petitioner appeals from the trial court's order. We reverse in part and remand.

The issues before this court for review are (1) whether the trial court erred in finding that petitioner's petition for reformation of the agreement was insufficient pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401); and (2) whether the trial court's grant of respondent's motion for a directed finding was contrary to the manifest weight of the evidence or constituted an abuse of discretion.

Petitioner and respondent were married on March 20, 1959, in Columbus, Ohio. A decree for divorce was entered on April 17, 1977. The parties were married for a total of 18 years. During the last nine years of their marriage, the parties resided in a home located at 159 North Humphrey in Oak Park, Illinois (marital home), which property is the subject of the dispute concerning the reformation of the agreement incorporated in the divorce decree.

The agreement provides as follows:

"Wife shall execute an undated quit-claim deed to such residence *** husband shall pay to wife a sum computed as follows: One-half of the equity in said family residence held by them at the time of entry of a Decree of Divorce, (which sum is agreed to by the parties to be $2,453.74 to which shall be added or subtracted a sum equal to the same percentage of such one-half equity as the percentage of increase or decrease in the total value of the family residence at the time of payment as compared with its value at the time of entry of a De-

cree of Divorce (which value is agreed by the parties hereto to be $40,000.00)) ***."

The sum $2,453.74 is hereinafter referred to as the "agreed number."

During the spring of 1986, respondent notified petitioner that he had sold the former marital home for $115,000 and intended to pay petitioner her share of the equity in the property as defined in the agreement. Petitioner's divorce attorney, Richard M. Kates, had either lost or failed to prepare the original undated quit claim deed in escrow, as required by the decree. Respondent's attorney, Robert Downs, prepared a second quit claim deed and forwarded it to respondent for execution. Petitioner then consulted her attorney, Sandra Burns, who approved the quit claim deed and reviewed the agreement whereupon she discovered that the amount of "one-half equity" in the marital home had been miscalculated. Petitioner argues that the correct amount of her share is $42,508.

After communicating this information to respondent's attorney, petitioner, in good faith, executed and returned the quit claim deed to Downs, who agreed to hold the proceeds of the sale of the marital home in escrow until a new agreement for the disbursement of said proceeds could be reached between the parties. Notwithstanding this compromise, Downs disbursed the greater portion of the proceeds to his client, respondent. Respondent used this money to purchase a new home, and he issued a check to petitioner for $9,508.24, based on the alleged miscalculated amount encompassed in the agreement.

On February 3, 1987, respondent filed a petition for rule to show cause against petitioner in the circuit court of Cook County for her alleged violation of the agreement. On March 6, 1987, respondent filed a motion to dismiss petitioner's petition for reformation and modification of the judgment, attorney fees and other relief. Said motion alleged that the petition for reformation fails to comply with the statutory requirements in sections 2—611 and 2—1401 of the Code of Civil Procedure. Ill. Rev. Stat. 1987, ch. 110, pars. 2—611, 2—1401.

On April 13, 1987, petitioner's verified petition was filed with the court. Respondent's attorney received a copy and notice of the petition prior to its filing. The complaint alleged that the division of the proceeds from the sale of the marital home had been erroneously calculated and that due to a mutual mistake of fact regarding the equity at the time of the entry of the decree, both parties and their attorneys permitted an incorrect number to be inserted in the agreement as the "agreed number."

On April 21, 1987, petitioner filed an amended verified petition for rule to show cause, declaratory judgment, attorney fees and other

relief. This amended petition repeated the original allegation of mutual mistake regarding the "agreed number" but added a series of exhibits including the mortgage balance at the time of the entry of the decree and various correspondence concerning the miscalculated figure inserted into the agreement as well as the quit claim deed and the closing statement for the sale of the former marital home.

On May 26, 1987, respondent filed a motion to dismiss the amended verified petition pursuant to section 2—1401 of the Code of Civil Procedure on the basis that a declaratory judgment was inappropriate and that no grounds existed for a rule to show cause. Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.

On December 7, 1987, respondent filed a petition for rule to show cause alleging (1) that petitioner refused to accept $9,508.24 as full payment under the agreement for her share in the marital home; and (2) that petitioner should be responsible for the payment of the attorney fees which respondent generated in the process of selling the marital home and in purchasing his present home because he had to spend additional time and money for legal fees to advance his petition for rule to show cause on account of petitioner's failure to cooperate.

On February 10, 1989, petitioner filed a second amended verified petition as well as a supplemental memorandum for rule to show cause. This memorandum provided Illinois precedent wherein courts allowed the reformation of judgments where there was a mutual mistake.

On February 28, 1989, the trial court made the following finding:

"The court has determined that in the event, based upon a full evidentiary hearing and a showing by clear and convincing evidence that a mutual mistake of fact exists(ed) with respect to the original settlement agreement, that it would have the power to reform the agreement ***.

\* \* \*

*** [T]he Court may inquire into whether there was, in fact, a mutual mistake of fact, and if so can reform an agreement which is embodied in a judgment.

\* \* \*

*** [I]f you *** are able to plead a mutual mistake of fact *** we will hold a hearing on it *** and there really is no dispute as to whether the $2,453.00, if that were the correct figure, is a whole equity or the half equity. So the problem is in the figure. I don't know how a figure can be ambiguous and that's the real controversy between you. A number, is the number correct or isn't the number correct? *** [B]ut if the figure

is incorrect which is what you are saying, and both parties were parties to that mistake if that's what we find."

On February 28, 1989, the trial court issued the following order:

"1. The motion to strike and dismiss the amended verified petition filed by [respondent] is granted;

2. Leave is granted petitioner to file a 3rd amended petition within 28 days thereafter to respond;

3. The court has determined that in the event, based upon a full evidentiary hearing and a showing by clear and convincing evidence that a mutual mistake of fact exists(ed) with respect to the original settlement agreement, that it would have the power to reform the agreement ***."

On April 3, 1989, petitioner filed a third amended verified petition. Petitioner's petition included the outstanding mortgage balance at Great American Federal Savings and Loan Association at the time of the entry of the decree, the outstanding second mortgage to the Lutheran Student Foundation of Metropolitan Chicago (Lutheran Foundation) and repeated the allegations regarding an erroneous calculation of the "agreed number." The remainder of the petition was devoted to the rule to show cause and the failure of respondent and his attorney to hold the proceeds from the sale of the former marital residence in escrow until an agreement was reached between the parties.

On May 8, 1989, respondent filed a motion to dismiss the third amended petition. After a hearing on respondent's motion, the trial court denied the motion, granted respondent 28 days to respond and set the matter for trial.

On October 25, 1989, the trial commenced. Both parties stipulated to the submission of numerous facts into evidence. Bixby, respondent's original attorney, testified as an adverse witness during the first day of the trial. In addition, petitioner testified on her own behalf. During the second day of trial, petitioner was cross-examined by defense counsel. Thereafter, respondent was called as an adverse witness. Kates was then called as a witness.

At the conclusion of the petitioner's case, respondent filed a motion for a directed finding which was later amended and filed on December 6, 1989.

On January 17, 1990, petitioner filed a motion to amend the pleadings to conform to the proof, wherein she alleged that the pleadings should be amended to permit the court to conclude that either a mutual mistake occurred or, in the alternative, that respondent misrepresented or misled her when the "agreed number" was incorpo-

rated into the agreement. Petitioner also filed a response to the amended motion for a directed verdict on that same date.

On February 7, 1990, the trial court entered an order granting respondent's motion for a directed verdict and dismissing petitioner's petition for reformation without prejudice.

The trial court also made the following findings of fact as the basis for its directed verdict in favor of respondent and its dismissal of petitioner's petition:

"The motion for a directed finding, the court must take all of the evidence presented in a light most favorably. In this case the former wife, we will take the husband and wife in this case, alleged in substance that there was a material [misstatement] of facts by both parties in the entry of judgment or that the husband deliberately mislead her at the time of entry of judgment.

* * *

Since the wife has not alleged to have been under duress or has disability, *** the wife, in order to prevail must show a fraudulent concealment for grounds for relief for all these years.

* * *

*** [T]hat the wife assumed the word equity meant one thing while her husband defined the term otherwise. The husband's definition of the word resulted in a specific dollar amount being inserted in the judgment.

* * *

It's not important how they got to that figure, the parties did agree to a figure and a figure was inserted.

* * *

The wife's failure to make this elementary check and computation constitutes a lack of due diligence. *** The wife was still guilty of lack of due diligence in failure to make a presentation of these grounds immediately thereafter. The fact that due diligence, the lack of due diligence was at the time of entry, even if the wife had been diligent, her petition fails. *** If there was a mistake, it was not mutual, it was a mistake by herself and attorney as to the figure and not to the definition. *** They may have disagreed on the definition but the definition, I repeat, ended up in a figure, the figure ended up in a judgment.

* * *

There is no fraud because there is missing one element of

fraud, a right by the alleged victim to rely on the alleged representation. *** Here in a divorce case, the wife had no right to rely on her husband's representation and when her attorney had available to [him] [easy] and convenient independent means to check any figure produced by the husband.

\* \* \*

The wife in this case has failed to prove her case not only by lack of clear and convincing evidence but by a preponderance, there just isn't enough here to show that there was an unusual mistake or that there was fraud ***."

It is from the above order and findings that petitioner appeals. Petitioner filed an appellate brief. Respondent, however, has failed to submit a brief to this court.

Petitioner contends that the trial court's finding that her petition was insufficient under section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) was erroneous for the following reasons: (1) because the trial court's ruling is contrary to the doctrine of equitable estoppel, which bars a party from raising the defense of the statute of limitations under certain circumstances; (2) because the trial court's ruling is contrary to the statute of limitations for written contracts (Ill. Rev. Stat. 1987, ch. 110, par. 13—206); (3) because the trial court's ruling is contrary to section 511(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 511(a)); (4) because the trial court's ruling was contrary to the divorce decree; (5) because the trial court's ruling was contrary to its own ruling made on February 28, 1989; and (6) because the trial court's section 2—1401 ruling is inequitable under the circumstances. We disagree.

We will address each of petitioner's six allegations supporting her assertion that the trial court's finding that her petition for reformation of the agreement was insufficient under section 2—1401 of the Code was erroneous.

First, petitioner alleges that the trial court's finding with respect to her petition was erroneous because it is contrary to the doctrine of equitable estoppel, which prevents a party from asserting the statute of limitations under certain circumstances. Respondent asserted the statute of limitations as a bar to petitioner's petition.

A party may be estopped from raising the statute of limitations where it is necessary to prevent injustice or fraud under circumstances in which the party seeking to assert the defense has conducted himself in a manner which has reasonably induced another party to follow a course of action that it otherwise would not have fol-

lowed and would be to the latter's detriment if it did not later repudiate its course of action. *York v. Village of Wilmette* (1986), 148 Ill. App. 3d 108, 116, 498 N.E.2d 712, 717.

In order for the above rule to apply, it is not essential that the representation or conduct in question was fraudulent in the strict legal sense or done with the intent to deceive. The test is whether, under all the circumstances of the case, conscience and the duty of honest dealing should deny a party the right to repudiate the consequences of the representations or conduct in question. One cannot "lull" his adversary into a false sense of security, causing the statute to bar his adversary's claim, and then plead the very delay that his conduct caused. *York*, 148 Ill. App. 3d at 116-17, 498 N.E.2d at 717.

A party who invokes estoppel to bar his adversary from asserting the defense of the statute of limitations must have refrained from commencing an action within the limitations period because of its reliance upon the other party, and the other party's conduct must have been of such character as to prevent inquiry, elude investigation, or mislead said party. *York*, 148 Ill. App. 3d at 117, 498 N.E.2d at 717.

■ Petitioner in the present case maintains that she was "lulled" because respondent continued to live in the marital home; that she was prevented from making an inquiry or conducting an investigation due to her desire to allow her children to continue living in the marital home; and that under the circumstances of the case, she should not be barred from repudiating respondent's representations and conduct. Petitioner's argument fails, as the doctrine of equitable estoppel does not apply to the present case since the action was commenced within the statute of limitations. See Ill. Rev. Stat. 1987, ch. 110, par. 13—206.

Second, petitioner maintains that her filing of the petition prior to the tolling of the statute of limitations (Ill. Rev. Stat. 1987, ch. 110. par. 13—206), within 10 years of the entry of the decree on April 11, 1977, establishes that the court erred when it dismissed her section 2—1401 action for reformation. Although the record shows that petitioner brought this action within the statute of limitations, her timely filing of the complaint does not guarantee that she is immune to a motion for a directed verdict. Accordingly, the trial court's finding with respect to petitioner's 2—1401 petition may not be deemed improper for the above reason.

Third, petitioner's allegation that the trial court's ruling was erroneous on the basis that said ruling is contrary to section 511(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) also fails. Spe-

cifically, petitioner argues that the trial court's ruling that she could only obtain relief by filing a section 2—1401 petition was erroneous as it was contrary to section 511(a) of the Act.

Section 511(a) of the Act provides: "Any judgment entered within this State may be enforced or modified in the judicial circuit wherein such judgment was entered *** by the filing of a petition ***." Ill. Rev. Stat. 1987, ch. 40, par. 511(a).

Section 510(b) of the same Act, however, mandates as follows: "The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." (Ill. Rev. Stat. 1987, ch. 40, par. 510(b).) Section 510(b) specifies that provisions of property settlements, such as the "agreed number" in question in the present case, are not modifiable unless the trial court finds that conditions sufficient to justify the modification of such judgments exist. See In re Marriage of Johnson (1992), 237 Ill. App. 3d 381, 390, 604 N.E.2d 378, 385.

We therefore find that the trial court's conclusion that petitioner had to file her petition under section 2—1401 of the Code in order to obtain reformation of the agreement was correct. A petition under section 2—1401 of the Code constitutes proper grounds for relief for a divorce decree which incorporates a written agreement that fails to express the true intent of the parties on account of mutual mistake. (In re Marriage of Johnson, 237 Ill. App. 3d at 394, 604 N.E.2d at 387-88.) Accordingly, the trial court's ruling is not contrary to section 511(a) of the Act and the court's ruling on petitioner's petition cannot be reversed on such grounds.

Petitioner next maintains that the trial court's finding was erroneous because it is contrary to the divorce decree. The decree for divorce reads as follows: "This court retains jurisdiction of the parties for the enforcement of their rights and obligations as set forth in this decree for divorce." Petitioner, however, has failed to demonstrate or explain how the trial court's ruling is contrary to the above provision. The record clearly shows that the trial court assumed jurisdiction over petitioner's complaint. The fact that the trial court granted respondent's motion for a directed verdict does not amount to the court stating that it had no jurisdiction over petitioner's complaint. The finding in question, therefore, was not contrary to the above provision in the divorce decree.

Next, petitioner maintains that the trial court's finding that her petition under section 2—1401 of the Code was insufficient was erroneous because it was contrary to the trial court's ruling on February

28, 1989. This argument also fails. On February 28, 1989, the trial court determined that if petitioner could present clear and convincing evidence of a mutual mistake with respect to the original agreement in a full evidentiary hearing, the court would have the authority to reform the agreement. We find that the trial court's finding on February 7, 1990, is not contrary to the February 28, 1989, ruling. In the February 7, 1990, ruling, the trial court held that petitioner's petition failed because petitioner did not meet her burden of proof. This ruling, although erroneous, is not erroneous on the basis that it is contrary to the previous ruling.

Finally, petitioner maintains that the trial court erred in finding that her petition was insufficient on the basis that said ruling is inequitable since the trial court's reliance upon section 2—1401 is improper, unjust and clearly erroneous and because the totality of the circumstances justifies the court's application of the doctrine of estoppel. We have addressed both of these allegations above and found them to be insufficient.

Accordingly, we cannot conclude that the trial court erred when it found that petitioner's petition was insufficient under section 2—1401 of the Code, based upon the above reasons.

The second issue before this court is whether the trial court's grant of respondent's motion for a directed finding was an abuse of discretion and contrary to the manifest weight of the evidence. Petitioner maintains that the trial court's findings of fact concerning the alleged mutual mistake and fraud and its subsequent order denying reformation of the agreement were both an abuse of discretion and contrary to the manifest weight of the evidence for the following reasons: (1) because the trial court should have found that petitioner established a *prima facie* case of mutual mistake or mistake by petitioner and fraud by respondent; (2) because the trial court failed to follow the rule of contract construction which requires a court to interpret words in a contract in accordance with their plain and ordinary meaning unless it clearly appears in the document that the parties intended a peculiar or unusual meaning; (3) because the trial court should have found that the "agreed number" in the agreement did not conform to the intent of the parties; and (4) because the trial court should have reformed the agreement. We agree.

On appeal of the grant of a respondent's motion for a directed finding made during a bench trial at the close of the petitioner's case, a reviewing court must determine whether the trial court erred in deciding that the petitioner failed to show a *prima facie* case. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45; *Heller v.*

*Jonathan Investments, Inc.* (1985), 135 Ill. App. 3d 350, 355, 481 N.E.2d 997, 1001.) A *prima facie* case is one in which the petitioner has presented at least *some* evidence on every element essential to his cause of action. (*Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 45.) A trial court's decision on this matter will not be reversed on appeal unless it is contrary to the manifest weight of the evidence. *Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 45; *Heller*, 135 Ill. App. 3d at 355, 481 N.E.2d at 1001.

In order for a party to obtain the reformation of a contract, the complaining party must show that a mistake was made by both parties or that a mistake was made by one party which is known and concealed by the other party. *In re Marriage of Johnson* (1992), 237 Ill. App. 3d 381, 394, 604 N.E.2d 378, 387-88.

■ In order for a party to reform a contract on the basis of mutual mistake, two elements must be present: (1) the mistake must be mutual; and (2) an agreement other than that expressed in writing must have been reached. (*Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 505, 378 N.E.2d 243, 247.) A party seeking reformation on the basis of mutual mistake need not allege in express terms that the written instrument in question was erroneously executed through mistake, as long as his pleading articulates specific facts from which such a conclusion is fairly deducible. *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 252, 524 N.E.2d 230, 235.

■ The elements of a cause of action for fraud are as follows: (1) a false statement of material fact; (2) which was known or believed to be false by the party making it; (3) which was made to induce the other party to act; (4) an action by the other party in justifiable reliance upon the statement in question; and (5) damage to the other party resulting from such reliance. (*Abshire v. Stoller* (1992), 235 Ill. App. 3d 849, 854-55, 601 N.E.2d 1257, 1260; *Ault v. C.C. Services, Inc.* (1992), 232 Ill. App. 3d 269, 271, 597 N.E.2d 720, 722.) A cause of action for fraud must include specific allegations of facts from which fraud may be inferred. *Albright v. Seyfarth, Fairweather, Shaw & Geraldson* (1988), 176 Ill. App. 3d 921, 932, 531 N.E.2d 948, 955.

Upon applying the above standards to the present case, we find that the trial court committed reversible error when it granted respondent's motion for a directed verdict. Petitioner's complaint coupled with the testimony at trial establish a *prima facie* case for mutual mistake sufficient to justify reformation of the agreement. Sufficient uncontradicted parol evidence and stipulated facts were presented by

petitioner concerning the true intent of the parties, establishing the facts in existence at the time of the decree for divorce and establishing that the "agreed number" inserted into the agreement was not petitioner's one-half share of the "equity" and that there was a mistake by her and respondent.

Petitioner introduced the following stipulated facts and parol evidence (see *In re Marriage of Johnson* (1992), 237 Ill. App. 3d 387, 391, 604 N.E.2d 388, 386), regarding a mutual mistake by both parties or fraud by respondent, and the intent of the parties and facts at the time the parties entered into the agreement:

"1. The parties purchased a marital residence at 159 North Humphrey, Oak Park, Illinois, in 1968, for a purchase price of $27,200.00.

2. At the time of the purchase of the marital home the parties obtained a first mortgage from Great American Federal Savings and Loan in the amount of $21,800.00.

3. At the time of the purchase of the marital home the parties borrowed $6,400.00 from the Lutheran Brotherhood for the down payment, said loan was guaranteed by the signature of Shaner.

4. At the time of the Decree for Divorce, the outstanding balance on the first mortgage at Great American Federal Savings & Loan was $16,018.17.

5. At the time of the Decree for Divorce, the outstanding balance on the loan for the down payment received from the Lutheran Brotherhood was $2,014.45.

6. At the time of the Decree for Divorce, the parties agreed that the value of the home was $40,000.00, eight years after the purchase date in 1968.

7. Shaner testified at the initial proceeding that the equity in the family residence would be divided equally.

8. The actual Agreement stated 'husband shall pay to wife a sum computed as follows:

one-half of the equity in said family residence held by them at the time of the entry of the decree of Divorce, (which sum is agreed by the parties hereto to be $2,453.74 \*\*\*).'

9. Shaner's letter with Bixby's notations dated November 19, 1976 shows in words and numbers the miscalculation incorporated into the Agreement."

Petitioner testified that she discovered that the amount of "one-half equity" had been miscalculated right after respondent sold the marital home. Petitioner also testified that she was unaware of the

Lutheran Foundation loan or that respondent included the entire amount of the loan as a credit to him. Kates, who was petitioner's attorney at the time of her divorce, also testified that she was unaware of the loan or its outstanding balance. Respondent was either unaware that the subtraction of a mortgage mostly paid off prior to the entry of the divorce decree was a mistake in calculation or he misled petitioner.

The following colloquy between respondent and petitioner's counsel occurred at trial:

"BURNS: My question is this. One-half of the equity at the time of entry of the decree, what do you understand that to mean?

DEFENDANT: If you read the following sentence, it spells that out. The sum is agreed by the parties here to be $2,453.74.

* * *

BURNS: It also says one-half equity. I'm asking you if [petitioner's] one-half equity was 2,453.00 dollars, then wouldn't your one-half equity be the same.

* * *

BURNS: And what would you have received?

DEFENDANT: I would receive the balance.

BURNS: Just tell me what your one-half equity was the same as hers?

DEFENDANT: That is assuming that we are describing equity in the same terms. What we describe as equity here in this particular formula is the loan origin minus its current balance. That is what we describe as equity * * *."

Respondent's examination continued and after further questioning regarding the calculation, mortgages and communications between the parties, the court asked the following question:

"THE COURT: What I want to know is this. Did you know at the time that these figures were finally entered into an agreement that if the property sold for $40,000.00 you would get approximately $19,000.000 and she would get $2,400.00, and you would get the appreciation and she would get zero?

DEFENDANT: I consciously knew that that would be a possibility and there were other ways to calculate what the value of that home would be."

The rules of contract construction provide that the words of a contract are to be interpreted in the ordinary meaning unless it clearly appears in the document that the parties intended them to have a peculiar and unusual meaning. (*Illinois Valley Asphalt, Inc. v.*

*La Salle National Bank* (1977), 54 Ill. App. 3d 317, 320, 369 N.E.2d 525, 528.) The trial court should have found that the parties intended to divide the equity at the time of the decree in half or equally.

■ "Equity" with respect to real estate is defined in the following manner:

> "The remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens. The amount or value of a property above the total liens or charges. The difference between the fair market value and debt in property; thus, an equity of $5,000 may come about by having fair market value property of $20,000 with debt of $15,000." Black's Law Dictionary 540 (6th ed. 1991).

The parties used the term "equity" with "one-half" in the agreement and stated in the proveup that the "equity" would be divided equally. The record indicates that the parties intended "equity" in its common and ordinary meaning because neither the agreement nor the proveup contained or recorded any peculiar or unusual meaning. Since there are no words in the agreement or the above testimony which would show that the parties intended a peculiar or unusual meaning, the court should interpret the words in their ordinary sense.

In addition, the "agreed number" in the present agreement is contrary to the plain and ordinary meaning of "equity" in that it is calculated not as the value of the marital home minus the mortgages and liens, but as the value of the marital home at the time of purchase minus the remainder of the first mortgage at the time of the divorce decree and the entire balance of the loan for the down payment at the date of purchase. The calculations of the "agreed number" were arrived at by respondent as follows:

| | |
|---|---|
| 1968 purchase price | $27,200.00 |
| minus down payment | - $ 5,400.00 |
| | = $21,800.00 |
| mortgage balance as of April, 1976 | = $16,892.55 |
| home equity | = $ 4,907.45 |
| divided by 2 = "agreed number" | = $ 2,453.74 |

The trial court should have found that the "agreed number" of $2,453.74, said to be "one-half the equity" was a mutual mistake if

equity is calculated according to the plain and ordinary meaning as the value of the property in excess of the mortgage and liens. One-half equity is $10,983.69 arrived at as follows:

| | |
|---|---|
| value of property | $40,000.00 |
| minus: first mortgage | - $16,018.00 |
| second mortgage | - $ 2,014.45 |
| equity at time of decree | = $21,968.69 |
| divided by 2 | = $10,983.69 |

The court should have found that the mistake made by petitioner and respondent was to the "agreed number" and it should have recognized that where parties to a written agreement included the term "equity" in a divorce decree without equivocation or elaboration and seemingly in its usual and ordinary context, the term should be interpreted in accordance with its common usage. When the trial judge recognized that the mistake made by petitioner and her attorney concerned the "agreed number" and not the definition of "equity," he should have reformed the document to correct the mistake in the calculation of the "agreed number." It is this calculation or determination of how the parties arrived at this figure that establishes the mutuality of the mistake or the mistake as approved by petitioner and her attorney and the mistake made by respondent.

■ We conclude that the trial court should have found that petitioner established a *prima facie* case of mutual mistake. Petitioner's pleading articulated specific facts from which the conclusion that the agreement was erroneously executed through a mistake was fairly deducible. (See *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 252, 524 N.E.2d 230, 235.) Petitioner then presented at least some evidence on every element essential to her cause of action. (See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45.) First, there was evidence that the alleged mistake was mutual. Petitioner testified that while reviewing the quit claim deed to the marital home, she discovered that the "one-half equity" in the marital home to which she is entitled under the agreement was based upon an erroneously calculated "agreed number" of $2,453.74 and that she should receive $42,508 pursuant to the agreement instead of the $9,508.24 which was issued to her by respondent's attorney. Respondent later testified that at the time of the entry of the divorce decree (which incorporated the agreement), he believed that the equity would be the same. The record shows that the "agreed number"

was mistakenly calculated by respondent. In addition, there is evidence that the parties reached an agreement which was different than the one expressed in the written agreement. As we noted above, there is evidence that the "agreed number" was contrary to the intent of the parties. Furthermore, petitioner and respondent both testified that they believed that the two should divide the equity in the marital home equally. For the above reasons, we find that petitioner presented a *prima facie* case of mutual mistake.

■ Although petitioner made specific allegations of facts from which fraud may be inferred, she did not present a *prima facie* case of fraud because she failed to present at least some evidence on every element essential to a cause of action for fraud. Arguably, there was evidence concerning four out of the five elements of fraud (see *Abshire v. Stoller* (1992), 235 Ill. App. 3d 849, 854-55, 601 N.E.2d 1257, 1260; *Ault v. C.C. Services, Inc.* (1992), 232 Ill. App. 3d 269, 271, 597 N.E.2d 720, 722); petitioner presented no evidence that she justifiably relied on the representations in question. Petitioner and respondent were parties to a divorce and both were represented by counsel. Petitioner's reliance was not justifiable because she and/or her attorney should have reviewed the "agreed number" as well as all other such provisions incorporated in the agreement. Petitioner therefore did not present a *prima facie* case for fraud.

Where a petitioner has presented a *prima facie* case, the trial judge, in his role as the finder of fact, must then weigh the petitioner's evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155, 407 N.E.2d 43, 45.) In the present case, however, the trial court never determined whether or not petitioner made a *prima facie* case. Instead, the court confused the elements of a *prima facie* case for mutual mistake and fraud with the due diligence requirements of a section 2—1401 petition. The trial court ruled that if there was a mistake as to the "agreed number," it was a mistake by petitioner and her attorney and said mistake constituted a lack of "due diligence." The trial judge made the following statement:

"It's not important how they got to that figure, the parties did agree to a figure and a figure was inserted.

\* \* \*

The wife's failure to make this elementary check and computation constitutes a lack of due diligence. \*\*\* The wife was still guilty of lack of due diligence in failure to make a presentation of these grounds immediately thereafter. The fact that due diligence, the lack of due diligence was at the time of entry, even if the wife had been diligent, her petition fails. \*\*\* If there was a

mistake, it was not mutual, it was a mistake by herself and attorney as to the figure and not to the definition."

■ We recognize that in order to obtain relief under section 2—1401, a petitioner must affirmatively set forth specific factual allegations supporting (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. (*In re Marriage of Johnson* (1992), 237 Ill. App. 3d 381, 394, 604 N.E.2d 378, 387.) The trial court erred, however, when it referred to a lack of "due diligence" with respect to petitioner's or her attorney's failure to discover the alleged error when the agreement was drafted because "due diligence" is *not* an element of a cause of action for mutual mistake. The trial court applied the due diligence requirement test when it should have determined whether petitioner presented at least some evidence on each element essential to her cause of action. As we noted above, however, the record shows that petitioner presented a *prima facie* case of mutual mistake to the trial court.

The trial court also improperly applied a different and more stringent standard in evaluating petitioner's complaint when it considered respondent's motion for a directed finding. The trial court stated that petitioner failed to show by a "preponderance of the evidence" or to present "clear and convincing evidence" that a mutual mistake was made. While these standards are correctly applied when deciding certain substantive issues at the *close of the entire case*, these are not the proper standards to apply when ruling on motions for a directed finding made during a nonjury trial at the close of the petitioner's case. *Heller v. Jonathan Investments, Inc.* (1985), 135 Ill. App. 3d 350, 355, 481 N.E.2d 997, 1001. See also *In re Marriage of Johnson*, 237 Ill. App. 3d at 394, 604 N.E.2d at 387 (the quantum of proof necessary to ultimately sustain a section 2—1401 petition is a preponderance of the evidence).

We therefore conclude that the trial court erred in granting respondent's motion for a directed finding. The trial court's order was contrary to the manifest weight of the evidence.

For the above reasons, the order and judgment entered in the circuit court on February 7, 1990, are reversed and the cause remanded for further proceedings consistent therewith.

Reversed in part and remanded.

CERDA and GREIMAN, JJ., concur.